AYRES *v.* HADAWAY.

1. CORPORATIONS—NONPROFIT—MEMBERS—BOARD OF DIRECTORS.

Provision of the general corporation act giving members of a nonprofit corporation the right to vote on propositions presented for decision at any meeting of the members does not give the members the right to direct the board of directors in all of its acts and doings nor qualify or limit the power of the board but prescribes the voting rights of the members *inter sese* (Act No. 327, § 122, Pub. Acts 1931, as amended by Act No. 194, Pub. Acts 1935).

2. SAME—DIRECTORS—QUESTIONS OF INTERNAL MANAGEMENT—COURTS.

The authority of directors is absolute when they act within the law and questions of policy and internal management are, in

the absence of nonfeasance, misfeasance, or malfeasance left wholly to their decision as it is not the function of the court to manage a corporation nor to substitute its own judgment for that of the officers thereof.

3. SAME—COURTS—INTERNAL MANAGEMENT—OFFICERS—FRAUD.

A court will interfere in the internal management of either a profit or nonprofit corporation only when the officers are guilty of wilful abuse of their discretionary powers, of bad faith, neglect of duty, perversion of the purpose of the corporation or when fraud or breach of trust are involved.

4. SAME—MEMBERS OF NONPROFIT ASSOCIATION—BOARD OF DIRECTORS —MEMBERS' NAMES AND ADDRESSES.

Under corporate bylaws providing that the business and property of a nonprofit corporation should be managed and controlled by the board of directors, action taken at meeting of members of the association in ordering that contract for printing club newspaper be returned to a certain individual free from dictation or censorship by the board of directors' and at same rate of compensation previously paid him and requiring publication of list of names and addresses of members in its first issue was not binding on the board and it did not abuse its discretion in refusing to publish the names and addresses of its members (Act No. 327, § 122, Pub. Acts 1931, as amended by Act No. 194, Pub. Acts 1935, Act No. 327, § 124, Pub. Acts 1931, as amended by Act No. 287, Pub. Acts 1939).

5. SAME—NONPROFIT—INSPECTION OF RECORDS BY MEMBERS—NAMES AND ADDRESSES.

Members of a nonprofit corporation have a right to inspect the corporate records and make a copy of the names and addresses of its members.

6. ATTORNEY AND CLIENT—PRACTICE OF LAW NOT A PROPERTY RIGHT.

The practice of law is not a property right but a privilege to those who attain certain standards of learning and character and may be surrounded with whatever restrictions the legislature may in reason prescribe.

7. SAME—REGULATION AS OFFICERS OF A COURT.

The power to regulate attorneys as officers of a court in which they practice does not depend upon constitutional or statutory grounds but is a power inherent in the court and is ample to protect court against dishonorable and corrupt practitioners.

8. SAME—NATURE OF PRIVILEGE.

An attorney is not an officer of the State in a constitutional or statutory sense of that term but an officer of the court

exercising, during good behavior, a privilege granted by the court in the exercise of its judicial power, not as a mere ministerial power.

9. COURTS—JUDICIAL POWER—INHERENT POWERS.

The judicial power of a Supreme Court has its origin in the Constitution and the court comes into existence with inherent powers including the right to protect itself, to enable it to administer justice whether any previous form of remedy has been granted or not, and to make rules of practice.

10. ATTORNEY AND CLIENT—REGULATION OF ATTORNEYS—COURTS— STATUTES.

The inherent power of a Supreme Court to regulate the qualifications of persons permitted to practice law and to suspend or disbar an attorney for sufficient cause and jurisdiction to do so does not depend upon statute but the enactment of legislation for such purpose does not make the act unconstitutional (Act No. 58, Pub. Acts 1935).

11. SAME—REGULATION—FEES.

Requirement of attorneys that in order to practice law they must pay an annual fee of not more than $5 for the purpose of carrying on the regulating of the profession does not detract from the right to make rules and regulations for the benefit of the profession (Act No. 58, Pub. Acts 1935).

12. SAME—PRACTICE OF LAW—MEMBER ON INACTIVE LIST.

A lawyer on the inactive list of the State bar, not paying dues, has no right to engage in the practice of law (Act No. 58, Pub. Acts 1935).

Appeal from Alcona; Smith (Fred P.), J., presiding. Submitted October 6, 1942. (Docket No. 6, Calendar No. 43,010.) Decided December 23, 1942.

Bill by Eben R. Ayres and others against John M. Hadaway and others for an injunction and mandatory injunction. Decree for defendants. Plaintiffs appeal. Affirmed.

*William R. Barber (Eben R. Ayres,* of counsel), for plaintiffs.

*Carl R. Henry,* for defendants.

*Dean W. Kelley, Henry L. Woolfenden, Jr.,* and *Paul G. Eger, amici curiae.*

Sharpe, J. This is a suit in equity by a minority group of members of the Lost Lake Woods Association, a Michigan nonprofit corporation, against the board of directors of the association for the purpose of obtaining injunctive relief and a mandatory injunction requiring the board of directors to do certain acts.

The case also involves the right of an inactive member of the State Bar of Michigan to engage in the practice of law.

The association owns approximately 9,200 acres of land in Alcona county upon which is located a club house. Its purposes are recreational. The association is governed by a set of bylaws. The bylaws provide that the annual meeting of the association shall be held during the first week in July. This meeting is for the purpose of electing officers and directors of the association and for the transaction of such other business as may properly come before the meeting.

The issues arising in this case result from action taken by the members at their annual meeting held July 6, 1940. At that meeting the members voted to return the printing of the club paper known as "Lost Lake News" to R. E. Prescott free from dictation or censorship by the board of directors and at the same rate of compensation as was formerly paid to him; and to publish a list of the names and addresses of the members of the association in the "Lost Lake News" in its first issue for the year. On August 3, 1940, the board of directors held a meeting and declined to recognize the action taken at the annual meeting.

The trial court after hearing the evidence entered a decree denying the relief prayed for on the ground that there was no fraud or mismanagement shown on the part of the board of directors. Plaintiffs appeal and urge that the trial court was in error in refusing to grant the relief prayed for.

In our discussion of this case we shall assume, without deciding, that the meeting of July 6, 1940, was a legal meeting with a sufficient number of members present and voting in person or by mail to conduct such business as could properly come before an annual meeting of this association.

Act No. 327, § 124, Pub. Acts 1931, as amended by Act No. 287, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 10135-124, Stat. Ann. 1942 Cum. Supp. § 21.125), provides:

"The property and lawful business of a nonprofit corporation shall be held and managed by a board of not less than 3 trustees or directors  *  *  * which board shall possess such powers and authority, in addition to the powers and authority herein specifically prescribed, as may be necessary to the complete execution of the purposes of each such corporation, as limited by the articles, or bylaws duly made."

Act No. 327, § 122, Pub. Acts 1931, as amended by Act No. 194, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 10135-122, Stat. Ann. § 21.123), provides:

"Each member or shareholder of a nonprofit corporation shall be equally privileged with all other members or shareholders in his voice and vote upon any proposition presented for discussion or decision at any meeting of the members."

Section 1-a of article 2 of the bylaws of the association provides:

"The business and the property of this association shall be managed and controlled by the board of directors excepting as these bylaws specifically require action by its members."

We have examined the bylaws of the association and find that they do not limit the powers of the board of directors as mentioned in section 124 of the corporation act, nor do we think that section 122 of the act gives the members of the association the right to direct the board of directors in all of its acts and doings. This section does not qualify or limit the powers of the board of directors, but prescribes the voting rights of the members *inter sese.*

In *Nahikian* v. *Mattingly,* 265 Mich. 128, 132, we said:

"It is a well-settled rule of law that the authority of the directors is absolute when they act within the law, and that questions of policy and internal management are, in the absence of nonfeasance, misfeasance, or malfeasance, left wholly to their decision."

In *Barrows* v. *J. N. Fauver Co.,* 280 Mich. 553, 558, we said:

"It is not the function of the court to manage a corporation nor to substitute its own judgment for that of the officers thereof. It is only when the officers are guilty of wilful abuse of their discretionary powers or of bad faith or of neglect of duty or of perversion of the purpose of the corporation or when fraud or breach of trust are involved that the court will interfere. *Dodge* v. *Ford Motor Co.,* 204 Mich. 459 (3 A. L. R. 413)."

See, also, *Wagner Electric Corp.* v. *Hydraulic Brake Co.,* 269 Mich. 560; *Burch* v. *Norton Hotel Co.,* 261 Mich. 311.

While the rule above announced applies to so-called profit corporations, yet the same rule applies

to nonprofit corporations. *Cicotte* v. *Anciaux*, 53 Mich. 227. In the case at bar, the bylaws of the association prescribed that the business and the property of the association should be managed and controlled by the board of directors. The action taken at the annual meeting was contrary to the bylaws and hence not binding on the board of directors. In our opinion the awarding of the contract for printing the publication is a matter that should be left to the discretion of the board of directors. Nor can we say that the board of directors abused its discretion in refusing to publish the names and addresses of its members. Our decision on this matter should not be interpreted to mean a denial to the members of the right to inspect the corporate records and make a copy of the names and addresses of its members.

The decree of the trial court is affirmed.

A matter of great interest to the legal profession developed during the trial of this case. Mr. Eben R. Ayres, a lawyer, appeared at the trial as counsel for the plaintiffs. His appearance as counsel was objected to by counsel for the defendants for the reason that Mr. Ayres' name did not appear on the active list of attorneys of the State Bar of Michigan. He is registered on the inactive list. The trial court sustained the objection and restricted him to an appearance *in propria persona*. Mr. Ayres urges that the right to practice law is a property right; and that Act No. 58, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 13603-1 *et seq.*, Stat. Ann. § 27.101 *et seq.*), authorizing the creation of the State Bar of Michigan violates the "due process" clause of the United States Constitution.

The Court Rules concerning the State Bar provide for two classes of membership, *i. e.*, active members and inactive members. Active members are required to pay annual dues of $5 each. An in-

active member is relieved from the payment of dues. The rules prohibit inactive members from practicing law and from voting or holding office in the State Bar.

We do not agree with Mr. Ayres that the practice of law is a property right. We think it a privilege to those who attain certain standards of learning and character. In *Cohen* v. *Wright,* 22 Cal. 293, it was held that the right to practice law is not a property right.

In *State, ex rel. Mackintosh,* v. *Rossman,* 53 Wash. 1 (101 Pac. 357, 21 L. R. A. [N. S.] 821, 17 Ann. Cas. 625), the court said:

"While it is true that the practice of law is a lawful occupation in itself, it is not a natural right or a right guaranteed by the Constitution. It is a privilege granted by the State and may be surrounded with whatever restrictions the legislature may in reason prescribe."

Mr. Ayres next urges that the act creating the State Bar of Michigan violates the due process clause of the United States Constitution.

In *Re Disbarment Proceedings of William L. Newby,* 76 Neb. 482, 486 (107 N. W. 850), it was said:

"Attorneys practicing in the district courts of this State are officers of the courts in which they practice. Their position is an honorable one; they are the trusted advisers of the court. There can be no doubt that the court has ample power to protect itself against dishonorable and corrupt practitioners."

In *Re Sparks,* 267 Ky. 93 (101 S. W. [2d] 194), it was said:

"The power to regulate the conduct and qualifications of its officers does not depend upon constitutional or statutory grounds. It is a power which is

inherent in this court as a court—appropriate, indeed, necessary, to the proper administration of justice.''

In *Re Disbarment of Greathouse,* 189 Minn. 51, 53, 55 (248 N. W. 735), the court said:

''An attorney is not an officer of the State in a constitutional or statutory sense of that term, but he is an officer of the court, exercising a privilege during good behavior. This privilege is granted by the court in the exercise of judicial power, not as a mere ministerial power. * * *

''The judicial power of this court has its origin in the Constitution; but when the court came into existence it came with inherent powers. Such power is the right to protect itself, to enable it to administer justice whether any previous form of remedy has been granted or not. This same power authorizes the making of rules of practice.''

In *Re Edwards,* 45 Idaho, 676, 690 (266 Pac. 665), it was said:

''The supreme court has the inherent power to adopt rules and regulations prescribing the fitness and qualifications of persons seeking to practice before the courts of this State, and to ultimately determine whether, under the statutes or rules promulgated by it, persons possess the necessary qualifications, or are persons of good moral character. The supreme court has the additional inherent power to suspend or disbar an attorney for sufficient cause, and jurisdiction so to do does not necessarily depend upon statutory enactments. (6 C. J. pp. 580, 581, § 37.)''

In our opinion there is inherent power in the Supreme Court to regulate the qualifications of persons who may be permitted to practice law in this State. That the legislature has seen fit to adopt legislation to this end does not make the act uncon-

stitutional. We do not think that the payment of a small annual fee for the purpose of carrying on the regulating of the profession detracts from the right to make rules and regulations for the benefit of the profession. We, therefore, hold that a lawyer on the inactive list of the State Bar of Michigan has no right to engage in the practice of law.

The decree of the trial court is affirmed, with costs to defendants.

CHANDLER, C. J., and BOYLES, NORTH, STARR, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.