**EMMONS v. SMITT et al.**

No. 4226.

District Court, E. D. Michigan, S. D.

Oct. 11, 1944.

John J. Sloan, of Detroit, Mich. (A. W. Sempliner, Hugh Francis, and Lawrence Rothenberg, all of Detroit, Mich., of counsel), for plaintiff.

George E. Brand, of Detroit, Mich., for defendants.

PICARD, District Judge.

Hearing on motion to dismiss plaintiff's action and on order to show cause why preliminary injunction should not issue.

Upon filing of the complaint an ex parte order issued restraining defendants (and requiring them to show cause why a preliminary injunction should not issue enjoining them) from continuing with pending State Bar proceedings against plaintiff.[1] Defendants, appearing specially, moved for dismissal on five points:

1. The court herein has no jurisdiction over the subject matter of plaintiff's alleged cause of action;

2. Plaintiff's suit herein is not within the jurisdiction of the court;

3. The court herein has no power to grant the, or any of the, relief prayed for in plaintiff's complaint;

4. The court herein has no jurisdiction over defendants or any of them; and

5. Plaintiff has failed to state a claim upon which relief can be granted.

Because of the natural interest of Michigan's bench and bar and developed attention of the public in the above matter, this court believes that in rendering this opinion we should clarify the scope of issues involved in clear, precise and direct language, particularly since we find that in this case there has been somewhat of a general tendency to read some things into opinions of several courts which are not there. It is believed further that because the result interprets some phases of the relationship existing between the highest court of Michigan and the federal court, it becomes important to review the powers of a federal court concerning the questions at hand.

---

[1] Individual defendants are members of a State Bar of Michigan Grievance Committee. See Act 58, P.A.Mich.1935, and State Bar Grievance Committee Rules adopted by the Supreme Court November 12, 1935 (273 Mich. pages xxxv–xlv), and March 16, 1936.

At the outset we desire to stress this important fact: We do not, in this opinion, decide whether plaintiff, Harold H. Emmons, was or was not guilty of unethical practices as a lawyer. The inquiry before us is simply: Has this court jurisdiction to try the issues presented by the pleadings which at this point consists of a complaint, a motion to dismiss, certain affidavits and exhibits and a motion to expunge those affidavits and exhibits from the record? No other question is before us. If we do have jurisdiction then the motion to dismiss should be denied and defendants ordered to plead. If jurisdiction is lacking, then our duty to dismiss the petition is mandatory. 28 U.S.C.A. § 80.

In considering the issues, we are first confronted with defendant's contention that the action should be dismissed on legal grounds appearing on the face of the complaint as clarified by affidavits. On the other hand, plaintiff insists that, no answer being filed, we must take everything in the complaint as true and that affidavits should not be considered upon a motion to dismiss.

Both claims—in a limited sense—are correct and within the authorities. In Boro Hall Corporation v. General Motors Corp., D.C., 37 F.Supp. 999, 1000, we learn that: "a controversy has existed as to this from the very inception of Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c."

But in Gallup v. Caldwell, 3 Cir., 120 F.2d 90, 92, it is stated: "We are met at the outset by the question whether it was proper for the court below to make a preliminary investigation, which carried it outside of the pleadings, as to the plaintiff's stock ownership. * * * If record ownership is a prerequisite to the right to bring this action, then it is expedient that the point be decided preliminarily. * * * IN SO HOLDING, WE DO NOT INDICATE THAT DISPUTED QUESTIONS OF FACT INVOLVED IN THE MERITS OF CLAIM OR DEFENSE MAY NECESSARILY BE FOUGHT OUT AS PRELIMINARY ISSUES RAISED UPON MOTIONS. THE AFFIDAVITS FILED BY THE PARTIES HERE RAISED NO FACT CONTROVERSY, BUT A QUESTION OF LAW." (Capitals ours.)

This latter decision expresses this court's views. We do not believe that affidavits or exhibits filed by defendants herein raise any controversy on the facts. If they do, they are not considered in this opinion. On any question of fact we accept as true statements made in the complaint—but we do not necessarily accept plaintiff's conclusions of law based thereon. Nor do we find it necessary to decide any factual question. On the contrary, we take the complaint as filed, using the affidavits merely to clarify noncontroversial matters referred to and alleged in the bill of compaint, being mindful that if there is no jurisdiction in this court to try the issues we must DISCOVER lack of it and act according to our own motion. Paramino Lumber Company v. Marshall, D.C., 18 F.Supp. 645.

With this background let us analyze the questions presented. In his pleadings—but more in his arguments and briefs—plaintiff contends he has a right to be heard in some court on the Michigan declaratory judgment statute; that the Supreme Court of Michigan denied him this right evidently on the theory that he was "a lawyer", ignoring entirely that he has fundamental rights "as a citizen"; that actually, by its holding, the Supreme Court has impinged upon those rights in violation of the Constitution of the United States; and that he now comes to the federal court by virtue of the authority granted him in the "civil rights" section of the Judicial Code, Title 28 U.S.C.A. § 41, par. 14.

Specifically plaintiff alleges that he has been or is about to be deprived of his property without due process of law (Fifth Amendment); and that by its decision the Supreme Court abridged his privilege as a citizen of the United States by denying him equal protection of the law (Fourteenth Amendment).

On this theory he bases his claim for relief in the federal court from the writ of prohibition granted by the Supreme Court of Michigan in an action started by him in the Ingham County circuit court May 3, 1943, where he—as a citizen—asked for a declaration of his rights under certain decrees in the circuit court for Oakland County and certain orders of the probate court of Wayne County. That ruling (State Bar of Michigan v. Ingham Circuit Judge et al., 307 Mich. 393, 12 N.W.2d 408, prohibited the Ingham Court from interpreting those orders and decrees which plaintiff contends were res judicata of certain matters and thus lim-

ited his ability to present a proper defense in the disciplinary proceedings pending before defendants. True he does, in the case at bar, and did, in the Ingham action, question the power of the state bar to exercise decision over his right to practice law not solely on the theory that it has no such power and that he has done no wrong as a lawyer, but if it has such power over him, as such, the acts complained of were done by him as a private citizen, an individual—not subject to review by a bar association. He also lays particular stress upon the fact that, since any citizen would have the right to secure a declaration of rights, his being a lawyer by profession should not result in his having less rights than he would have as a citizen.

This court being more than ordinarily interested by this approach and noting plaintiff's distinction, first made a study of the complaints, particularly as to prayers for relief, to compare what plaintiff had asked in the Ingham court with what he is asking by his present action.

To begin with, we find that in both cases Mr. Emmons describes the history of events that led to his differences with the Michigan State Bar, which are briefly these:

That one Cummings died in 1920, leaving a will that he (Emmons) had drawn in which he was named as one of the executors and one of the trustees of certain charitable trusts therein created; that the Cummings estate was insolvent, and that, in order to save it and if possible to pay its creditors, petitioner arranged to purchase certain of its assets with title in the name of himself and friends; that later the group of which he was a party made several sales of the property so obtained and that his own and his associates' qualifications to give good title were attacked in the courts of Oakland County chiefly on the theory that Emmons as executor could not participate in the sale of the estate's assets to himself; that it was held by Judge Gillespie of Oakland County that he (Emmons) not only had done nothing contrary to ethics while acting as executor of the estate but that he and his associates could and had given good title to the property so sold. Each complaint further recites that his entire purpose in getting this property in his own name was to salvage something for the estate, that during the intervening years he used his own funds, worked hard, incurred personal liabilities and finally turned over to the trust for a crippled children's organization some $400,000 after paying all indebtedness of the estate; that on May 8, 1928, when the estate was closed and the trust created he erroneously reported in his final probate account that he still had one million dollars in assets belonging to said estate which were then to become part of the trust. We direct attention to the words "erroneously reported" in the preceding sentence, since it is Mr. Emmons' claim that it is chiefly because of this "error" that he has been so unfairly and unjustly accused. But regardless of error or misunderstanding plaintiff's position in both cases is that since he had good title to the property, granted by proper orders of the probate court, tested and sustained by decrees of the circuit court of Oakland County, that what he did with those assets from the day he received them was entirely his personal business; that it was in truth a valiant attempt on his part to save for the crippled children's foundation (recipients and beneficiaries of the trust) as much money as he could; and that he actually made an insolvent estate solvent.

Then, he requests that, because of the significance of these "personal acts", this court prohibit the State Bar from attacking his actions as a "lawyer", "executor" or "pseudo trustee", since all such matters and questions were adjudicated by the aforesaid orders of the probate court and decrees of the circuit court. On this he seeks a declaration of his rights under the Michigan declaratory judgment statute, Comp.Laws Mich.1929, § 13903 et seq., denied him by the claimed "capricious" and "arbitrary" decision of the Michigan supreme court.

■ The State Bar in its motion to dismiss brings in some matters that would ordinarily go into an answer, but it was apparent to this court that since plaintiff called for a declaration of rights as evidenced by certain decrees and orders and other court records, we could not reach an intelligent conclusion without further examination of those decrees and orders and the official records upon which plaintiff based his entire case, regardless of any affidavits in the motion to dismiss. Going outside the bill of complaint was,

in our opinion, made mandatory by the bill itself. This would be "clarification" and it would be our duty to do so. Gallup v. Caldwell and Paramino Lumber Company v. Marshall, supra.

We compared, also, the prayers in both the Ingham and federal bills of complaint and found that they are, as contended by petitioner, practically the same with one single exception—that in the present suit plaintiff in his third paragraph asks us to hold that "the several ORDERS of the Probate Court for Wayne County authorizing and confirming the sales of the equities of the real estate described herein WERE FINAL AND CONCLUSIVE, and that the three DECREES of the Oakland County Court mentioned herein were likewise final and conclusive and constituted judicial and legal judgments and determinations." (Capitals ours.)

This, Mr. Emmons did not directly pray in the Ingham suit unless we interpret the word "matters" in that action to mean "orders" and "decrees"—which we do not. The word "matters" is broader than "orders" or "decrees". In reply to the court's suggestions at the hearing that there was obviously merit to this prayer, defendants announced that they never did question the finality, conclusiveness or determinative value of such decrees and orders as to issues before the court therein, but that the grievance complaint against Emmons begins with what happened following 1928 when Emmons reported to the probate court of Wayne County that he was then turning over about one million dollars worth of property from the closing Cummings Estate to the new trust. (R 103—4—9—11.) According to plaintiff's counsel this was the first time such an admission had ever been made by the State Bar in this much publicized and litigated matter either in pleadings or open court, and this alone may clear away some misunderstandings as to why the State Bar has seen fit to take action. That step was not taken —as believed by many—because Mr. Emmons as an executor "sold" property to himself from the estate for which he was acting, but is based on what he allegedly did with estate assets he reported as still in his hands when the estate was closed and he had passed from his role of executor to that of trustee. We deemed this admission most significant in pursuing our deliberations.

## Constitutionality of State Bar

But before deciding the main issues raised by plaintiff we must dispose of another question.

The sixth prayer in the suit at bar asks that Act No. 58 of the Public Acts of Michigan for the year 1935 creating the State bar and authorizing the "Supreme Court to provide for the organization regulation and rules of government thereof" be declared unconstitutional and void under Article 12, § 1, of the Constitution of the State of Michigan, which provides that: "Corporations may be formed under general laws, but shall not be created, nor shall any rights, privileges or franchises be conferred upon them, by special act of the legislature."

Although we requested arguments or citations in substantiation of this contention we received absolutely no aid from plaintiff. The only cases presented came from the defense to the effect that the Michigan Supreme Court declared the act creating the State Bar Association constitutional, in Ayres v. Hadaway, 303 Mich. 589, 6 N.W.2d 905, from which there has been no appeal to the Supreme Court of the United States. It appears to this court that this contention was abandoned by plaintiff and we do not discuss or consider it any further.

We come now to the first constitutional question:

### The Fifth Amendment

"No person shall * * * be deprived of life, liberty, or property, without due process of law."

Has plaintiff been or is he about to be deprived of his property without due process of law?

The answer is "no", since state and federal courts have all held that the right to practice law is not a property right nor is it a privilege granted or defended by the Federal Constitution. Bradwell v. Illinois, 16 Wall. 130, 139, 21 L.Ed. 442, after referring to previously decided cases, states the position of our highest tribunal in these words: "unless we are wholly and radically mistaken in the principles on which those cases are decided, the right to control and regulate the granting of license to practice law in the courts of a State is one of those powers which are not transferred for its protection to the

Federal government." See Ex parte Lockwood, 154 U.S. 116, 14 S.Ct. 1082, 38 L.Ed. 929; and Green v. Elbert et al., 8 Cir., 63 F. 308.

The right to practice law is NOT A PROPERTY RIGHT. (Capitals ours.) In re Thatcher, D.C.Ohio, 190 F. 969; and Ayres v. Hadaway, 303 Mich. 589, 6 N.W.2d 905.

■ The power of a court to investigate the conduct of its own officers is inherent. Ex parte Burr, 9 Wheat. 529, 6 L.Ed. 152.

And while it may be contended that most of these cases involved admission to practice, it is also the rule of disbarment. See Selling v. Radford, 243 U.S. 46, 37 S.Ct. 377, 378, 61 L.Ed. 585, Ann. Cas.1917D, 569, where it was held: "(a) that we have no authority to re-examine or reverse, as a reviewing court, the action of the supreme court of Michigan in disbarring a member of the Bar of the courts of that state for personal and professional misconduct; (b) that the order of disbarment is not binding upon us as the thing adjudged in a technical sense; * * * Meeting this situation, we are of opinion that, on the case presented, our duty is not to review the action of the state court of last resort,—a power which we do not possess."

Plaintiff cited no cases on the issues of either the right of individual states to exercise complete control over licensing and conduct of its own attorneys or that the right to practice law is a property right.

### The Fourteenth Amendment

■ The question of plaintiff's rights under the Fifth Amendment of our Federal Constitution and the constitutionality of the Michigan state bar act being eliminated, we turn to plaintiff's further contention that he has a right to injunctive and declaratory relief on his theory that by virtue of the decrees and orders referred to what he did (a) concerning the Cummings estate property after it came into his hands admittedly legally, prior to his report of 1928 as executor, and (b) his turning over of certain assets in 1935 after his individual hard work, was entirely personal and not chargeable either for or against him as an attorney, trustee, or executor.

On this point any jurisdictional right of plaintiff to be in this court based on the Fourteenth Amendment must admittedly rest in reading into prayers 4 and 5 of the present bill a request for our interpretation on the effect of the Wayne probate orders and the Oakland decrees which the supreme court of Michigan prevented the Ingham Court from making.

The Fourteenth Amendment reads: "Section 1. * * * No State shall * * * deny to any person within its jurisdiction the equal protection of the laws."

It will be noted that this is a prohibition against the state itself and is distinguishable from the Fifth Amendment.

In determining whether plaintiff has been deprived of equal protection of the laws of the State of Michigan, we examined those Wayne County orders and Oakland decrees and found that Emmons had good title to the property involved as against said estate and those claiming thereunder. Those orders and decrees are undoubtedly conclusive, final and determinative of the issues therein involved. But plaintiff desires this court, and evidently desired the Supreme Court of Michigan, to hold that those decrees and orders relieved him from all future obligations to anyone concerning that property or its proceeds.

■ While we hold to a belief that no lawyer or citizen by decree or order of a court can have all his future conduct —right and wrong—interpreted, and while we think that some such conduct might be affected by the decree and some might not, we grant for the time being that plaintiff's contention is the correct interpretation of what those decrees and orders mean. Even then does that give this court jurisdiction to pass upon the legal effect of those decrees and orders by virtue of the declaratory judgment statute when the Supreme Court of Michigan has already spoken on the scope of the declaratory judgment statute upon which plaintiff rests his hopes?

In the Michigan decision, State Bar of Michigan v. Ingham Circuit Judge, 307 Mich. 393, 12 N.W.2d 408, 411, the declaratory judgment statute is comprehensively covered. The court says, quoting from one of its own decisions: "The proceeding (declaratory judgment) is special, is not a substitute for the regular actions, and is not an exercise of general equity jurisdiction in which the court may grant consequential relief under a general prayer or upon general equitable considerations."

Reading further, we find in reference to the State Bar act it provides: "a special statutory method for the determination of ethical questions of professional conduct on the part of attorneys". Still further: "Emmons also urges that the matters complained of in the disbarment proceedings represent business matters and not the practice of law. THIS IS AN ISSUE THAT COULD BE DETERMINED IN DISBARMENT PROCEEDINGS." (Capitals ours.)

Again from the State Bar-Ingham case, quoting from Borchard on Declaratory Judgments: "Where, however, a special statutory method for the determination of the particular type of case has been provided, it is not proper to permit that issue to be tried by declaration."

Here then is what the Michigan Supreme Court says is the scope of its declaratory judgment statute. It applies to citizen and lawyer alike and in the case at bar there does exist a "special statutory method for the determination of the particular type of case", to-wit: the State Bar act. Here, also, is the promise of the Supreme Court that the issue of the scope of those decrees and orders can "be determined in the disbarment proceedings." What then remains?

We cannot under the guise of "constitutional rights violated" act as an appeal court over the Supreme Court of Michigan. Rooker v. Fidelity Trust Company, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362; United States ex rel. Parker v. Carey, 7 Cir., 135 F.2d 205. If a state court misses—and we carefully refrain from hinting that it has—but if it does miss in the interpretation of the scope of one of its own statutes—surely a federal court cannot interfere; otherwise every case triable by a state court could be brought here for review and the chaos to follow would be beyond description.

And even if we did have that right, we again direct attention to the fact that up to this point plaintiff has not been disbarred or disciplined and, as yet, the Michigan court has not finally refused to interpret the legal effect of the decrees and orders involved. He will have his day in court on that question. There is no denial to plaintiff of the "equal protection" clause just because a legal question that he desires to have settled immediately is to be taken up in a different order and by an augmented tribunal. We

have been shown no authorities that Mr. Emmons can pick his own time and his own tribunal for hearing.

We concede, but do not determine, that a situation might possibly exist where, if the Supreme Court of Michigan arbitrarily and capriciously prohibited a state circuit court from proceeding under the declaratory judgment statute, the wronged person would have redress to either the Supreme Court of the United States, or to this court. But here the situation is different because the plaintiff is a lawyer and the Supreme Court of the State of Michigan by its inherent right has decreed the method by which a lawyer who is faced with disbarment or discipline can have his rights determined. The right to control and regulate the granting of a license to practice law in the State of Michigan belongs to the State and in Michigan is governed entirely by the Supreme Court. Bradwell v. Illinois; Selling v. Redford, supra, and other cases cited herein.

As a member of the bar plaintiff is going to have the question of what the legal breadth of those orders and decrees is settled, and when that happens, the effect will be the same as though the declaratory judgment had been the medium. But because Mr. Emmons is a lawyer and his right to practice law and not his rights as a citizen are being attacked, the procedure is entirely within jurisdiction of the state. If in the course of events his interpretation of the scope of those orders and decrees is correct the matter is ended. If on the other hand the Supreme Court holds against him this court would have no power to review.

Plaintiff has referred us to Townsend v. Gordon, 308 Mich. 438, 446, 14 N.W. 2d 57, 61, as authority, quoting an extract from 1 Restatement of the Law of Trusts, § 125, p. 315, as follows: "If property is transferred to a person to be disposed of by him in any manner or to any person he may select, no trust is created and the transferee takes the property for his own benefit."

The Townsend opinion is based upon an entirely different set of facts, and when read in its entirety is more of an authority for defendants than for plaintiff, for that case emphasizes that we must read the will "as a whole" and look to the "intent of the testator". The Gordon will in the Townsend case gave the property directly to the executors. The Cum-

mings will did not. The question there is on the construction of a will, but were the points at issue identical and the Supreme Court of Michigan had acted entirely contrary to its own settled rules of law and decisions in disposing of the Ingham County matter, what right has this court to compel a state tribunal to rule in a manner that we might call "consistently"? Is failure on the part of the Supreme Court of the state to follow its own decisions according to the way we might interpret them violation of a litigant's constitutional rights? We think not. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

### The Civil Rights Paragraph

 Claim is also made by plaintiff that he has a right to be in this court by virtue of the Judicial Code, title 28 U.S. C.A., Section 41, subparagraph 14. This is known as the "civil rights statute". But the civil rights which are protected by that paragraph are only those rights, privileges and immunities secured by the Constitution of the United States or some law of the United States passed pursuant to constitutional authority. Simpson v. Geary, D.C., 204 F. 507. It does not for example confer jurisdiction to enjoin a draft board for inducting plaintiff into the military service even though it is alleged that it so inducted him in violation of his constitutional and legal (civil) rights. Bonifaci v. Thompson, 252 F. 878.

These authorities we believe are sufficient.

In conclusion, may we reiterate that we believed it to be our clear duty to clarify the bill of complaint herein and that is what we have done—clarifying it by obtaining information concerning undisputed matters which plaintiff himself placed in the complaint directly or by reference. We repeat, we are not passing upon plaintiff's alleged wrong-doings. Mr. Emmons may have accomplished great good for this estate. In truth, if this estate was insolvent in 1920 (and it apparently was) and by his own efforts plaintiff built up a fund of almost one million dollars that the Children's Crippled Foundation never would have received had the estate run the usual gauntlet of legal proceedings, he is entitled to some commendation. This is true even though in turning over the proceeds of those assets, which he himself created by his genius, his resourcefulness, business ability and hard work, he might only have done what he could have been legally compelled to do. However, if following such good work he continued to act as trustee—with or without bond—and dissipated those assets or manipulated and concealed the exchange of good trust securities for questionable stock of his own—as alleged by the State Bar—then that matter should properly have been brought to the attention of its Grievance Committee, and should have been inquired into.

Mr. Emmons seemingly now feels that he is to be judged by those who have gone so far in their public denunciation of his alleged bad ethics that they must, perforce, find him guilty to save themselves from ridicule. We find no indications that such is the case, but even if this is the situation, Mr. Emmons is at least partly to blame. His report to the probate court in 1928 partly started what he terms the "misunderstanding". But the State Bar is not going to handle Mr. Emmons' rights in this matter. He will be heard by three circuit judges of this state, and only if the bar reports grounds for some discipline. The court of three judges before whom he must then appear—if not the Supreme Court of Michigan to which he may appeal for a trial de novo—will undoubtedly inquire into all the facts in this long drawn out litigation right from their beginning and the legal scope of those decrees and orders will be inquired into. We have confidence in the ability and integrity of the judges of the circuit courts of this state. If they should err—the Supreme Court of Michigan will correct that error, and after all the Supreme Court is the very tribunal to which an appeal would have been taken had the circuit court of Ingham County proceeded with its own interpretation of the declaratory judgment act.

Since defendants do not question the efficacy of the decrees of Oakland County and orders of Wayne Probate Court to settle the issue therein involved, there is removed the possibility of any constitutional question for this court to pass upon.

Summarizing, the court holds:

(a) That the right to practice law is not a property right within the meaning of the Constitution.

(b) That the act creating the State Bar of Michigan is constitutional;

(c) That the right to practice law and the conduct of attorneys is strictly within the control of the State of Michigan and its Supreme Court.

(d) That the declaratory judgment statute does not apply where there is a special statutory method for the determination of the particular type of case as in this instance.

(e) That there is no violation of the Fourteenth Amendment where there is a tribunal for hearing provided.

(f) That the civil rights statute stems from the rights, privileges and immunities secured by the Constitution and is not applicable in the case at bar.

For the reasons given herein, the motion to dismiss is granted, the complaint is dismissed, the restraining order is dissolved and the motion for preliminary injunction is denied—all without costs.