STATE BAR OF MICHIGAN *v.* CITY OF LANSING.

1. ATTORNEY AND CLIENT—REGULATION OF ATTORNEYS—COURTS—STATUTES.

The inherent power of a Supreme Court to regulate the qualifications of persons permitted to practice law and to suspend or disbar an attorney for sufficient cause and jurisdiction to do so does not depend upon statute but the enactment of legislation for such purpose does not make the act unconstitutional (CL 1948, § 691.51 *et seq.*).

2. CORPORATIONS—SPECIAL ACTS.

A corporation may not be created by a special act of the legislature (Const 1908, art 12, §§ 1, 2).

3. SAME—POWERS.

A corporation, as the term is used in the Constitution, includes associations having any of the powers or privileges of corporations not possessed by individuals or partnerships (Const 1908, art 12, § 2).

4. STATUTES—CONSTITUTIONAL LAW—CORPORATIONS—STATE BAR.

It is assumed that the legislature knew of restrictions imposed upon it with respect to creating corporations by special act when it enacted the statute creating the State bar (CL 1948, § 691.51 *et seq.*).

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur, Attorneys at Law § 19.
Power of legislature respecting admission to bar. 144 ALR 150.
[2] 13 Am Jur, Corporations § 24.
[3] 13 Am Jur, Corporations § 5.
[4] 11 Am Jur, Constitutional Law § 129.
[5, 6] 5 Am Jur, Attorneys at Law § 2.1.
Integration of bar. 114 ALR 161; 151 ALR 617.
[7] 11 Am Jur, Constitutional Law § 97.
[8] 51 Am Jur, Taxation § 561.
[9] 14 Am Jur, Costs § 23.

**5. ATTORNEY AND CLIENT—STATE BAR—STATUTES—INTENT.**

The statute authorizing the creation of the State bar clearly intended to provide for an agency that should function pursuant to rules and regulations prescribed by the Supreme Court for the purpose of performing, and assisting in the performance of functions that in the final analysis, pertain to the judiciary (CL 1948, § 691.51 *et seq.*).

**6. SAME—STATE BAR—RULES AND REGULATIONS—DISCIPLINE—PUBLIC WELFARE—JUDICIARY.**

The rules and regulations concerning the State bar which have been adopted by the Supreme Court are consistent with the legislative purpose of the statute creating the State bar and, insofar as the rules pertain to the discipline, suspension, or disbarment of the members of the profession and the fixing of ethical standards to be observed in the practice of the law, they relate to the public welfare and protection and are within the scope of the inherent power of the judiciary (CL 1948, § 691.51 *et seq.*).

**7. STATUTES—CONSTRUCTION.**

If a statute is of such a character that it is subject to differing interpretations one of which would result in the act being held unconstitutional and the other permitting its being upheld as valid, the latter alternative will be accepted.

**8. ATTORNEY AND CLIENT—STATE BAR—PROPERTY—TAXATION.**

The State bar, as organized pursuant to statute creating it, is a public, not a private, agency subject to direct control of the State and is, in effect, a governmental agency whose property is exempt from taxation (CL 1948, § 691.51 *et seq.*).

**9. COSTS—PUBLIC QUESTION—TAXATION OF STATE BAR PROPERTY.**

No costs are allowed in State bar's suit for declaration of rights as to its liability for property taxes, a public question being involved (CL 1948, § 691.51 *et seq.*).

Appeal from Ingham; Fox (Raymond W.), J., presiding. Submitted April 6, 1960. (Docket No. 25, Calendar No. 48,356.) Decided September 16, 1960.

Bill by State Bar of Michigan, a public body corporate, against the City of Lansing, a municipal corporation, and certain of its officials, with Lansing School District No. 1 and County of Ingham subse-

quently joined as parties defendant, for declaration of rights and refund of taxes paid on State Bar properties. Decree for plaintiff. Defendants appeal. Attorney General intervenes asking reversal. Affirmed.*

*Joseph W. Planck* and *Everett R. Trebilcock,* for plaintiff.

*Joseph Lavey,* City Attorney (*Hubbard, Fox, Thomas & Born* and *Donald G. Fox,* of counsel), for defendant City of Lansing.

*MacLean & Seaman* (*Charles R. MacLean,* of counsel), for defendant Lansing School District No. 1.

*Jack W. Warren,* Prosecuting Attorney, for defendant County of Ingham.

*Paul L. Adams,* Attorney General, and *Samuel J. Torina,* Solicitor General, for intervenor-appellant.

KELLY, J. This controversy involves certain real and personal property belonging to the State Bar of Michigan, including the land upon which the present State Bar headquarters were at time of trial being erected, and the personal property of the State Bar which was at that time situated in the Hollister Building, Lansing, Michigan.

---

* REPORTER'S NOTE: The following communication, dated September 16, 1960, and addressed to the Commissioners of the State Bar of Michigan, was made by the Supreme Court:

"This Court has this day decided as a matter of law that the property involved in *State Bar of Michigan* v. *City of Lansing* is tax exempt.

"As a matter of policy, however, in pursuance of its supervisory function in relation to the integrated State Bar, this Court also desires to express its unanimous view that the State Bar of Michigan should forthwith contract for payment of the same sums as would be paid by the State Bar to interested taxing units if the State Bar were not tax exempt."

The real estate involved had been assessed for city, school, and county taxes for the years 1955, 1956, 1957, and 1958, and all of said taxes had been paid under protest.

Plaintiff appeared before the board of review of the city of Lansing and filed a written claim of exemption from taxation, claiming that it is a public body corporate, created by statute, organized and regulated under the rules of and under the direct and immediate control of the Supreme Court of Michigan, and that it is an educational and scientific institution and, therefore, exempt from taxation under the general property tax laws.

The exemption was denied by the board of review. The State Bar of Michigan filed a petition for declaration of rights.

At the hearing, Mr. Raymond Dresser, then president of the State Bar of Michigan, testified that the State bar association maintained offices at 384 Hollister Building, Lansing, Michigan, on leased property and that the quarters were not adequate; that the State Bar had about 8,900 members and was in the process of completing new headquarters; that the new building would house executive offices of the State Bar, including administrative work of the State bar association as well as the work of its 49 regular committees and 28 grievance committees and the board of bar examiners; that there were no plans for any charge for use of the building; that there is a large lounge in the building for entertainment purposes with limited facilities for the service of food through a catering service; that the building contains a large meeting room, primarily for the use of committees and sections of the State Bar; and that, although members of the public might be permitted the use of the facilities, the facilities were primarily intended for the members of the bar; that "if the public has matters which are germane to the

functions of the State Bar, they will probably use the building, but to open it up for general public purposes, any meetings they might want to hold, I know of no plans for that"; that the State Bar of Michigan controls the building subject to the rules adopted by the Supreme Court; that the money for the construction of the State Bar building came from lawyers and donations from the public; that no money was contributed by the State of Michigan and there is no obligation of the State of Michigan on any bonds in connection with the building; that the land was purchased from funds of the State Bar and the building constructed through voluntary contributions from lawyers, banks, trust companies, and relatives of deceased lawyers; that funds used to purchase the land came from dues contributed by lawyers, which dues were set by the Supreme Court, plus small additional revenues from advertising in the Bar Journal and a few other sources; that no funds are received by the State Bar from taxes collected by the State of Michigan.

Mr. Milton Bachmann, executive secretary of the State Bar, testified that action had been taken by the board of commissioners seeking a change of the rules of the Supreme Court relative to the designation of the State Bar of Michigan as a public body corporate just before the State Bar made the final determination to construct its building; that a commissioners' committee of the State Bar presented recommendations to the board of the State Bar and the board approved presentation of the recommendations to the Supreme Court; that the petition of the State Bar was approved by the Supreme Court, as the result of which the rules were changed so as to refer to the State Bar of Michigan as being organized and existing as a public body corporate; that the books of the State bar association are not audited by any division of the government of the State of

Michigan, and no accounts are filed with any division of the State government except the clerk of the Supreme Court; that none of the employees of the State Bar are paid out of tax funds collected by the State of Michigan; that it was not contemplated that the State of Michigan would maintain the building; that the operating expenses would be paid for out of funds accruing to the State Bar through dues; that 18 of the commissioners of the State Bar are elected by lawyers of their respective congressional districts and 4 are appointed by the Supreme Court at large, making a total board of 22, and that neither the governor nor the legislature has anything to do with the appointment of the State Bar commissioners.

E. Blythe Stason, A.B., B.S., J.D., after having been qualified as an international authority on legal education, testified that the legal education of a lawyer begins in a formal way somewhere in the middle of college years, continues through college and law school and into post graduate years, for the reason that the body of the law is constantly changing and the lawyer today must deal with problems that differ from those yesterday and the day before yesterday; that the need for continuing legal education is being met by 3 or 4 institutes offered by the University of Michigan Law School, the program of the American Bar Association, and educational programs offered by the State Bar of Michigan, both by institutes and convention workshops; that various committees of the State Bar involve legal research in many fields toward the end of improvement of certain phases of the law; that the institutes offered by the law school and the State Bar are specialized training intended for the legal profession.

At the conclusion of proofs defendants' motion to dismiss was denied. Defendants appeal, asking:

"That the decree entered below be set aside.

"That the case be remanded for entry of a new

decree declaring the real and personal property involved to be subject to taxation."

The integrated State Bar was first created by the legislature by the enactment of PA 1935, No 58 (CL 1948, § 691.51 *et seq.* [Stat Ann § 27.101 *et seq.*]), using the following language:

"An act to create the State Bar of Michigan; and to authorize the Supreme Court to provide for the organization, regulation and rules of government thereof.
"*The People of the State of Michigan enact:*
"Sec. 1. There is hereby created an association to be known as the State Bar of Michigan, the membership of which shall consist of all persons in the State now or hereafter regularly licensed to practice law in this State.
"Sec. 2. The Supreme Court is hereby authorized to provide for the organization and regulation of the State Bar of Michigan; to provide rules and regulations concerning the conduct and activities of the association and its members; the schedule of membership dues therein   *   *   *.'"

The Supreme Court has adopted certain rules granting powers and duties to the State Bar,[1] some of which are:

a. The State Bar is charged with enforcement of the Supreme Court rule that any person not an active member who practices law in this State shall be subject to discipline.   (Rule 3.)[2]

b. The State Bar is required to prosecute by way of injunction any of its members in case of persistent or repeated misconduct publicly committed.   (Rule 14, § 2.)[3]

---

[1] See 317 Mich xxxix; 330 Mich xlii; 337 Mich xxxix; 340 Mich xxxviii; 343 Mich xli; 350 Mich xiii; 351 Mich xiv; 354 Mich xiv; 355 Mich xvii; 359 Mich xiii; 39 MSBJ, June, 1960, p 12 *et seq.*— Reporter.
[2] See 351 Mich xv.—Reporter.
[3] See 317 Mich xlvi.—Reporter.

c. The State Bar has the duty and power to investigate complaints against members of the bar and to hold hearings thereon. It may dismiss or may reprimand. It may prosecute for suspension or disbarment in circuit court which shall confirm the recommendation unless just cause is shown to the contrary. (Rule 15.)[4]

d. Every grievance committee of the State Bar has the power to issue subpoenas in the name and under the seal of the State Bar of Michigan and to cause evidence to be taken under oath. (Rule 15, § 27.) Failure of a witness to appear and give evidence constitutes contempt of court. (Rule 15, § 29.)[5]

e. Depositions in grievance matters may be taken before any member of a grievance committee or before any judge authorized to take depositions. (Rule 15, § 28.)[6]

f. The State Bar has the power and the duty to investigate petitions for reinstatement and to file with the Court its certified report and recommendations thereon. (Rule 15, § 18.)[7]

g. The State Bar has the power and the duty to investigate the moral character of student applicants for admission to the bar and report thereon to the board of law examiners. (Rule 16.)[8]

h. The State Bar is authorized and empowered to investigate and to file and prosecute actions and proceedings pertaining to the unauthorized practice of law, and its general counsel is directed to assist therein. (Rule 17.)[9]

In determining the right of an inactive member of the State Bar of Michigan to engage in practice

[4] See 343 Mich lix; 354 Mich xv; 355 Mich xvii; 359 Mich xiii.— REPORTER.

[5] See 343 Mich lxi; 359 Mich xiii.—REPORTER.

[6] See 343 Mich lx; 359 Mich xiii.—REPORTER.

[7] See 343 Mich liv; 359 Mich xiii.—REPORTER.

[8] See 337 Mich xxxix.—REPORTER.

[9] See 355 Mich xix.—REPORTER.

of law, our Court in *Ayres* v. *Hadaway,* 303 Mich 589, 597, said:

"In our opinion there is inherent power in the Supreme Court to regulate the qualifications of persons who may be permitted to practice law in this State. That the legislature has seen fit to adopt legislation to this end does not make the act unconstitutional."

Commenting upon this *Ayres Case,* appellants state:

"The court below seemed to attach some weight to the fact that regulation of lawyers is a matter which properly falls within the judicial department of government and that all lawyers are 'officers of the court'. Granting that such regulation is inherent in the Supreme Court, we find no authority for the creation of a State department or agency to accomplish this purpose. Moreover, as pointed out in *Ayres* v. *Hadaway,* 303 Mich 589, 597, quoting from a Minnesota case:

" 'An attorney is not an officer of the State in a constitutional or statutory sense of that term, but he is an officer of the court, exercising a privilege during good behavior.' "

This appeal involves the question as to the status of the plaintiff: Is it, as defendants seem to contend, actually a private organization made up of the members of the bar? Or is it, on the contrary, a governmental agency created for a specific purpose logically falling within the scope of the judiciary?

Under article 12, §§ 1 and 2, of the State Constitution (1908), a corporation may not be created by special act of the legislature. Under section 2 the term "corporation" is declared to include associations having any of the powers or privileges of corporations not possessed by individuals or partnerships.

It must be assumed that the legislature in the enactment of PA 1935, No 58, creating the integrated State Bar, knew of the restrictions imposed by said sections of the Constitution. What then was the purpose of the legislature in enacting the statute?

The provisions of this act are such as to clearly indicate that it was the intent of the legislature to provide for the organization of an agency that should function pursuant to rules and regulations prescribed by the Supreme Court for the purpose of performing, and assisting in the performance of functions that, in the final analysis, pertain to the judiciary. Clearly if such was not the intention there would have been no attempt to invest this Court with the powers of organization and regulations obviously contemplated by the language of the statute.

This Court proceeded accordingly, and, in so doing, actually construed the legislative enactment. The rules and regulations that have been adopted are consistent with the legislative purpose, as disclosed by the act. This is particularly true insofar as matters pertaining to the discipline, suspension, or disbarment of members of the profession are concerned and the fixing of ethical standards to be observed in the practice of law. These are matters that relate to the public welfare and protection. Likewise, they are matters within the scope of the inherent power of the judiciary. Such proposition was recognized by this Court in *Ayres* v. *Hadaway, supra,* where the constitutionality of the act was assumed and its operation construed to some extent.

It would seem that we are confronted with this situation: Either it is, as claimed on behalf of plaintiff, a State agency, the property of which is exempt from taxation under the general law; or, its existence is subject to attack on the ground that the act of the

legislature is invalid under article 12, §§ 1 and 2, of the Constitution (1908).

It may be noted in passing that the question of constitutionality was raised in *Emmons* v. *Smitt* (CCA 6), 149 F2d 869, but the Federal court declined to pass on the theory that such an issue must be determined by the court of last resort of the State. It is apparent that under the reasoning in *Ayres* v. *Hadaway, supra,* this Court has, in effect, rejected any possible claim of unconstitutionality, which action was consistent with the discussion as to the purpose of the act and the rules of this Court adopted thereunder.

The general principle has repeatedly been invoked that if a legislative enactment is of such a character that it is subject to differing interpretations, one of which would result in the act being held unconstitutional and the other permitting its being upheld as valid, the latter alternative will be accepted. In other words, the presumption is that the legislature would not intend to pass an act in contravention of a constitutional restriction or otherwise invalid.

The oral arguments in this case were heard on April 6, 1960. On the preceding day, April 5th, the supreme court of Wisconsin handed down its decision in *Lathrop* v. *Donohue,* 10 Wis2d 230, 232, 233, 237, 238, 242, 243, 245 (102 NW2d 404), and we quote from the report of that case as follows:

"Action commenced June 8, 1959, by Trayton L. Lathrop to recover the sum of $15 paid by him to the defendant Joseph D. Donohue under an alleged unconstitutional compulsion.

"The material allegations of the complaint are as follows: The plaintiff was admitted to practice of law by the supreme court of Wisconsin in 1948 and since his admission he has practiced his profession at the city of Madison. The defendant is the treasurer of the State Bar of Wisconsin (hereinafter re-

ferred to as the 'State Bar') which was integrated on a trial basis in 1956, by order of the supreme court of Wisconsin, and functions under the rules and by-laws of such organization approved by further order of the same court. This integration of the bar was continued in effect on a permanent basis by further order of such court entered December 22, 1958. Such rules and by-laws impose compulsory membership and the payment of annual dues upon all persons admitted to practice law and engaged in the active practice of law in the State as a requisite of such persons continuing in such active practice. On or about March 6, 1959, the plaintiff paid under protest to the defendant the sum of $15 to cover his annual dues to the State Bar for the calendar year 1959, and accompanied such payment with a letter which stated that such payment was made under compulsion of the by-laws of such organization requiring such payment.   *   *   *

"The rules and by-laws of the State Bar, as approved by this court, do not compel the plaintiff to associate with anyone. He is free to attend or not attend its meetings or vote in its elections as he chooses. The only compulsion to which he has been subjected by the integration of the bar is the payment of the annual dues of $15 per year. He is as free as he was before to voice his views on any subject in any manner he wishes, even though such views be diametrically opposed to a position taken by the State Bar.

"The right to practice law is not a right but is a privilege subject to regulation. *Petition for Integration of the Bar of Minnesota* (1943), 216 Minn 195, 200 (12 NW2d 515, 518). As the Arizona court well stated in *In re Greer* (1938), 52 Ariz 385, 389 (81 P2d 96, 98):

" 'The right to practice law is not a natural nor constitutional one, in the sense that the right to engage in the ordinary avocations of life, such as farming, the industrial trades and the mercantile business is. It has always been considered as a privilege

only, bestowed upon certain persons primarily for the benefit of society, and upon such terms and conditions as the State may fix. The final determination as to what these conditions are, and who has satisfactorily complied therewith, is, and always has been, in the courts before which the individual practices his profession, and from time immemorial such individuals have been considered essentially and primarily as officers of the court admitting them.'

"The only limitation upon the State's power to regulate the privilege of the practice of law is that the regulations adopted do not impose an unconstitutional burden or deny due process. *Schware* v. *Board of Bar Examiners of New Mexico* (1957), 353 US 232 (77 S Ct 752, 1 L ed 2d 796, 64 ALR2d 288).   *   *   *

"The State Bar is a public and not a private agency. In the annotation entitled, 'State bar created by act of legislature or rules of court; integrated bar,' 114 ALR 161, the author states:

" 'While the statutes or court rules under which they have been organized differ to some extent, integrated bars have the common characteristics of being organized by the State or under the direction of the State, and of being under its direct control, and in effect they are governmental bodies.'

"*State Bar of California* v. *Superior Court* (1929), 207 Cal 323, 328 (278 P 432, 434), and *In re Gibson* (1931), 35 NM 550, 570 (4 P2d 643, 653), support the above-quoted statement.   *   *   *

"It is our considered judgment that the orders of this court integrating the bar, and continuing such integration, violate none of the First-Amendment freedoms of the plaintiff as embodied in the due-process and equal-protection-of-the-laws clauses of the Fourteenth Amendment."

We affirm the trial court's finding that "the property of the State Bar of Michigan located at the city of Lansing, which was dedicated on May 1, 1959, and which is described in the pleadings in this cause, is determined to be public property belonging to the

State of Michigan and as such is exempt from taxation."

Affirmed. No costs, a public question involved.

DETHMERS, C. J., and CARR, SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.