SAROKI v CITY OF DETROIT

1. ZONING—CONSTRUCTION—PROVISO LANGUAGE—LIQUOR LICENSES—
   DETROIT ZONING ORDINANCES.

   The proviso language contained in the special exception and
   modification section of the Detroit Zoning Ordinance regulating
   package liquor stores is mandatory in nature and therefore
   requires that the zoning board approve a request for a package
   liquor license where the board certifies that the proposed
   location is at least 500 feet distant from an existing identical
   type license, a church or an elementary, junior, or senior high
   school site (Detroit Zoning Ordinance No. 858-G, ch 68,
   § 62.0402[m]).

2. STATUTES—CONSTRUCTION—CONSTITUTIONALITY—COURT OF AP-
   PEALS.

   The Court of Appeals must strive to give constitutional validity to
   a legislative enactment when construing it; therefore, if differ-
   ent interpretations are argued, one which would result in its
   being upheld constitutionally and one which would render it
   unconstitutional, the former will prevail.

3. ADMINISTRATIVE LAW—STANDARDS—GUIDELINES.

   Administrative agencies must be governed by adequate standards
   and guidelines in order to protect the people from uncontrolled,
   arbitrary power in the hands of administrative officials.

4. ZONING—EXCEPTIONS—DEPARTMENT OF BUILDINGS AND SAFETY EN-
   GINEERING—APPEAL AND ERROR—BOARD OF ZONING APPEALS—
   LIQUOR LICENSES—DETROIT CITY CHARTER—DETROIT ZONING OR-
   DINANCES.

   The Detroit City Charter gives the Department of Buildings and

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 45 Am Jur 2d, Intoxicating Liquors § 138 *et seq.*

   Reasonableness of statutory or local regulations prohibiting sale or
   license for sale of intoxicating liquors within prescribed distance
   from church, school or other institutions. 119 ALR 643.

   Zoning regulations in respect of intoxicating liquors. 9 ALR2d 877.

   Church or the like, within statute prohibiting liquor sales within
   specified distance thereof. 59 ALR2d 1439.

[2] 73 Am Jur 2d, Statutes §§ 142–341.

[3] 1 Am Jur 2d, Administrative Law § 106 *et seq.*

Safety Engineering the duty to allow or deny exceptions under the zoning ordinances subject to the terms and conditions provided in other sections of the ordinances; thus, it was not error for a trial court to order the Board of Zoning Appeals to approve a liquor license contingent upon a certification by the board that the location of the licensed premises is 500 feet from other such licensees or from a church, elementary, junior or senior high school where the special exception and modification section of the zoning ordinance specifically states that the board, not the Department of Buildings and Safety Engineering, shall certify the 500-foot limitation (Detroit City Charter 1973, §§ 7-401, 7-402; Detroit Zoning Ordinance 858-G, ch 68, § 62.0402[m]).

Appeal from Wayne, James N. Canham, J. Submitted October 13, 1976, at Detroit. (Docket Nos. 26133, 26134, 26281.) Decided February 2, 1977.

Complaint for an order of superintending control by Gabe Saroki against the City of Detroit, the city's Board of Zoning Appeals, and others, to require the issuance of certain liquor licenses. The University District Community Association, David Northcross, William Burgess, and Al Fishman were permitted to intervene as party defendants. The circuit court ordered the defendant city and its appropriate agencies to approve the requested license. The Sherwood Forest Association was then permitted to intervene as a party defendant. All intervening defendants appeal. Affirmed.

*Jerome P. Cavanagh,* for plaintiff.

*Bromberg, Robinson, Shapero & Cohn* (by *Michael M. Jacob),* for Sherwood Forest Association.

*Michael B. Staebler,* for the University District Community Association.

*Marston, Sachs, Nunn, Kates, Kadushin &*

*O'Hare, P. C.* (by *Ronald R. Helveston),* for North-cross, Burgess and Fishman.

Before: D. E. HOLBROOK, JR., P. J., and N. J. KAUFMAN and D. C. RILEY, JJ.

D. E. HOLBROOK, JR., P. J. Plaintiff, Gabe Saroki, owned a restaurant building on Livernois Avenue in the City of Detroit. He applied to the Department of Buildings and Safety Engineering (DBSE) for a permit to convert his restaurant business to a party store with SDD and SDM licenses (carry out sale of beer, wine and packaged liquor). The permit was denied because of "Regular Use 858-G" and sent to the Board of Zoning Appeals (the Board). The Board proceeded to hold public hearings. Owners of real property near plaintiff's building were notified that they could voice their complaints at the hearing. Several of them appeared with their objections at the public hearing.

The hearing was held pursuant to the special exception and modification section of the Detroit Zoning Ordinance. This Court is now concerned with deciding whether the Board followed the proper procedure under that section. Ordinance 858-G, ch 68, § 62.0402 provides:

"The Board shall hear and decide only such special exceptions and modifications as they are specifically authorized to pass on under the terms of this Ordinance. They shall decide such questions as are involved in determining whether special exceptions or modifications should be granted and shall impose such condition and safeguards as it deems necessary to carry out the intent, spirit and purpose of this Ordinance. They shall deny those requests which are not in harmony with the intent and purpose of this Ordinance."

\* \* \*

"(m) The Board may permit, after public hearing the

establishment of businesses holding SDM (Specially Designated Merchant) or SDD (Specially Designated Distributor) licenses in the B2, B3, B4, B5, B6, M1, M2, M3, M4, M5, and PCA Districts, or permit, after public hearing, the acquisition of such licenses by existing businesses in these same districts, provided the following findings can be made or waived for just cause:

"1. That the establishment of said use, when considered in conjunction with existing similar uses, will not be injurious or harmful to adjacent uses or to the surrounding area;

"2. That the establishment of said use will not create a concentration of uses in the area which would contribute to the establishment or development of a 'Skid Row' atmosphere, and

"3. That the establishment of said use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes permitted.

"Provided, however, that no such review shall be required by the Board if it can certify that the location proposed is at least 500 feet distant from an existing identical type license or is at least 500 feet distant from a church or an elementary, junior, or senior high school site."

Saroki's building was located in a B2 zoning district and he was required to obtain a special exception from the Board for the SDD/SDM license. Therefore, acting under subsection (m) the Board held the hearing. They reviewed the application, employing the fact-finding process of 1, 2 and 3. At the first hearing on August 5, 1975, the zoning inspector submitted a staff report to the Board which included the following:

"A survey of the area within 500 feet shows that there are no SDM or SDD licenses within this area."

Later, at a September 9, 1975, hearing further information relating to existing SDD and SDM

licenses was accepted, none of which contradicted the earlier information. Eventually the Board decided the case, denying the permit:

"The provision in the Ordinance that no review shall be required by the Board if it can certify that the proposed location is at least 500 feet distant from a church or an elementary, junior or senior high school site or from an identical type license does not require in its opinion that. the Board shall approve such request. *It only gives discretionary power to the Board whether the Board shall hold such a review or not, but must still make the findings as required by the Ordinance paragraph (M), 1, 2 and 3.*[1] *"* (Emphasis supplied.)

The plaintiff filed a Petition and Complaint for Superintending Control against the Board in the Wayne County Circuit Court, charging that the Board was required to issue the SDD and SDM license without a hearing once it had established that no other SDD/SDM licenses were within 500 feet.[2] The trial judge granted the petition, holding that the proviso language of the ordinance was mandatory in nature.

On review this Court accepts the interpretation of the Detroit ordinance expressed by the trial judge.

Subsection (m) of the special exception section was ambiguously drafted. In the first sentence the Board "may permit" an SDD or SDM license after a public hearing. To construe this language permissively would give the Board absolute discretion-

---

[1] We note that later in its opinion the Board included an additional review of plaintiff's application. The standard there was much different: Would the special exception be in keeping with the spirit and intent of the zoning ordinance? This standard appears in the introduction of the Special Exception and Modification section and is broader than the review under subsection (m)1, 2 and 3.

[2] Certain procedural matters dealing with motions for intervention are not pertinent to the disposition of this case.

ary power over license applications even after a public hearing. The proviso language of same subsection is equally unclear. There it states that no review (1, 2 and 3) "shall be required". Defendants have argued that this language gives the Board the discretion to review applications via hearings in all cases whether or not the 500 foot limitation applies. If we accept this argument, an applicant for an SDD/SDM license has no way of predicting Board action. He may or may not have a hearing and even so the Board could deny the permit. The total effect is unfettered Board discretion.

When construing a legislative enactment this Court must strive to give it constitutional validity. In other words, if different interpretations are argued, one which would result in its being upheld constitutionally and one which would render it unconstitutional, the former will prevail. *State Bar of Michigan v Lansing,* 361 Mich 185, 195; 105 NW2d 131 (1960).

Read permissively subsection (m) is an unconstitutional delegation of power from the city to the Board. Administrative agencies must be governed by adequate standards and guidelines. The laws of the state and its subparts cannot leave people unprotected from uncontrolled, arbitrary power in the hands of administrative officials. *Dept of Natural Resources v Seaman,* 396 Mich 299, 308, 309; 240 NW2d 206 (1976). See, *Osius v St Clair Shores,* 344 Mich 693; 75 NW2d 25 (1956), *State Highway Commission v Vanderkloot,* 392 Mich 159; 220 NW2d 416 (1974). In order to avoid a finding of unconstitutionality of this type a Federal panel interpreted a Detroit ordinance waiver of locational provisions to be mandatory. "May" was interpreted as "shall". *Nortown Theatre Inc v Gribbs,* 373 F Supp 363 (ED Mich, 1974). We

therefore hold that the proviso of subsection (m) is mandatory. Plaintiff Saroki was entitled to an SDD/SDM permit once the Board certified that his building was more than 500 feet from other such licensees or from a church, elementary, junior or senior high school.

Defendants also raise the issue of remand. The trial court remanded to the City of Detroit and its appropriate agencies including the Board and DBSE to approve the SDD/SDM license. The Detroit City Charter gives the DBSE the duty to allow or deny exceptions under the zoning ordinance, but they are subject to the terms and conditions provided in other sections of the ordinance. See Detroit City Charter of 1973, §§ 7-401, 7-402. The proviso of subsection (m) specifically states that the Board, not the DBSE, certify the 500 foot limitation. The trial judge correctly ordered the Board to review the license application again under the proviso. We would add, however, that while the Board has already made findings on the 500 foot review as it relates to existing licenses there was no such finding as to distance from churches and schools. Once the Board has completed a certification the DBSE shall grant the license pursuant to the Detroit Zoning Ordinance as of September 9, 1975.

Affirmed.