GAC COMMERCIAL CORPORATION v MAHONEY
TYPOGRAPHERS, INC.

1. ATTORNEY AND CLIENT—CANONS OF ETHICS—PRESERVING CONFI-
   DENCES—APPEARANCE OF IMPROPRIETY—TERMINATING EMPLOY-
   MENT.

   The canons of professional ethics require that a lawyer preserve
   the confidences and secrets of a client, exercise independent
   professional judgment on the client's behalf, and avoid even the
   appearance of professional impropriety; a lawyer must refuse to
   continue employment where the interests of another client may
   impair his independent professional judgment, and such dis-
   qualification may arise merely through partnership or associa-
   tion with another attorney who is ethically prevented from
   continued participation in litigation.

2. ATTORNEY AND CLIENT—CANONS OF ETHICS—APPEARANCE OF IMPRO-
   PRIETY—REMEDIAL ACTION—SPECIFIC ALLEGATIONS—CONFLICT
   OF INTEREST.

   Attorneys must not only adhere to the canons of professional
   ethics, they must also scrupulously avoid those situations in
   which it can be said that there is even an appearance of
   impropriety; where it might appear that impropriety exists,
   remedial action is required even though there are no specific
   allegations of affirmative wrongdoing or a clear conflict of
   interest.

3. ATTORNEY AND CLIENT—PARTNERSHIPS—EXCHANGE OF KNOWLEDGE
   —REVELATION OF CONFIDENCES—APPEARANCE OF IMPROPRIETY.

   A partnership of attorneys is typically an association where close
   communication, cooperation and exchange of knowledge and
   ideas is common and necessary practice; where such activity
   may potentially result in the revelation of the confidences of
   opposing litigants, there exists an appearance of impropriety
   which must be eliminated.

Appeal from Kalamazoo, Donald T. Anderson, J.

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 7 Am Jur 2d, Attorneys at Law §§ 34, 38, 154.

Submitted November 4, 1975, at Grand Rapids. (Docket No. 22828.) Decided December 8, 1975.

Complaint by G.A.C. Corporation, Business Assets Corporation and Joe Goldberg against Mahoney Typographers, Inc., Claire J. Mahoney, The City of Kalamazoo and Saniwax Paper Company for claim and delivery. From an order denying the removal of the law firm of Stanley, Davidoff, Long & Gray from further representation of Business Assets Corporation and Joe Goldberg in the case, defendants appeal. Reversed.

*Stanley, Davidoff, Long & Gray,* for plaintiffs Business Assets and Joe Goldberg.

*Wise, Sayen & Basch,* for defendants.

Before: T. M. Burns, P. J., and V. J. Brennan and M. F. Cavanagh, JJ.

T. M. Burns, P. J. This appeal concerns the disqualification of the members of a law firm from further representing one of the parties to this suit. We address this opinion only to that question and not to the merits of the civil litigation.

Plaintiffs Business Assets Corporation and Joe Goldberg have been represented by Llewellyn Gray of the law firm Stanley, Davidoff, Long and Gray since the commencement of the suit. Defendants Mahoney Typographers, Inc. and Claire J. Mahoney were initially represented by Benjamin W. Wise of the law firm of Wise, Sayen and O'Connor.

From June, 1972, until May, 1974, Michael O'Connor, as a partner of Wise, Sayen and O'Connor, took full responsibility for conducting defendants' defense. In June, 1974, Mr. O'Connor termi-

nated his partnership and became associated with the law firm which represents the plaintiffs (Stanley, Davidoff, Long and Gray).

There is no contention that Mr. O'Connor has been connected with this litigation since his disassociation with the law firm which represents the defendants, nor is there any indication that Mr. O'Connor has discussed the case with Mr. Gray after becoming associated with him. Mr. Gray has continued to represent the plaintiffs, and the defendants seek the disqualification of Mr. Gray and his law firm. The trial court refused to disqualify Mr. Gray. Defendants appeal.

*Should a law firm be disqualified from continuing to represent a client where, during the pendency of the litigation, it hired an attorney who represented the opponent in the same case?*

Defendants contend that Mr. Gray's continued representation of the plaintiffs would be unprofessional and would create the appearance of impropriety. Plaintiffs argue that no confidences have been or will be divulged and that Mr. O'Connor will not be involved in the litigation in any way.

We initially note that the issue raised herein is a difficult one and that our decision could be construed in an overbroad manner. Our holding is limited strictly to the facts of the instant case. Applying the appropriate provisions of the Code of Professional Responsibility and prior case law relevant to this appeal, we reverse the trial court and remand for an order disqualifying Mr. Gray and the members and employees of his firm from further representing the plaintiffs in this litigation.

Defendants point to Canons 4, 5 and 9 of the Code of Professional Responsibility and Canons (385 Mich lvi) as requiring disqualification in this case. Canon 4 states that a lawyer should preserve

the confidences and secrets of a client. Canon 5
states that a lawyer should exercise independent
professional judgment on behalf of a client. Canon
9 requires that a lawyer avoid even the appear-
ance of professional impropriety. There is no indi-
cation that any of these canons have been directly
violated, but this fact is not of great significance.
The potentiality of unethical conduct and the mere
appearance of impropriety are serious questions
which the code is designed to answer.

We can find no case law which directly answers
the question before us, but in *Auseon v Reading
Brass Co,* 22 Mich App 505; 177 NW2d 662 (1970),
we had before us a closely analogous situation.
There, several former employees of the defendant
corporation were suing for bonuses allegedly due
for services previously rendered. Defendant chal-
lenged the representation of the former employees
by attorney Kenneth G. Prettie, claiming that
there was a conflict of interest. Prettie had been a
trustee of defendant's employee retirement fund
and was co-trustee of the trust whose corpus con-
sisted of almost half of the corporation's outstand-
ing shares of stock. Prettie had also represented
the corporation in negotiation of a contract be-
tween it and one of the plaintiffs, who was in turn
represented at the time by a member of Prettie's
law firm. On the basis of then Canon 6, relating to
representing a client with undivided fidelity and
maintaining the secrecy of confidences, and former
Canon 37, relating to the duty of a lawyer to
preserve confidences beyond current employment,
we held that the attorneys should be disqualified
to maintain the appearance of propriety. Prettie
had drafted the contract for the corporation and
later represented parties adverse to his former
client. Disqualification of Prettie was required, and

the association between Prettie and Hayes in the same law firm required that Hayes be disqualified.

DR 5-105 of Canon 5 requires refusal to continue employment if the interests of another client may impair the independent professional judgment of the lawyer. DR 5-105(D) states that "[i]f a lawyer is required to decline employment or to withdraw from employment under DR 5-105, no partner or associate of his or his firm may accept or continue such employment". Our reasoning in *Auseon* and the clear language of DR 5-105(D) indicate that disqualification may arise merely through partnership or association with an attorney who is ethically prevented from continued participation in litigation.

*W E Bassett Co v H C Cook Co,* 302 F2d 268 (CA 2, 1962), involved a similar conflict. The issue there concerned the appropriateness of the representation of the plaintiff by a partner in a law firm which included an attorney who had represented the defendant in previous litigation concerning issues on which he had previously advised the defendant. Basing its decision in part on American Bar Association Canons 6 and 37, the Court found disqualification was required because of the partnership association and the prior representation and advisement.

In the case at bar, there is no indication that confidences have actually been disclosed in violation of Canon 4 nor that any specific disciplinary rule has been violated. But in light of the apparent potentiality of even an inadvertant violation of Canon 4 and the mandate of Canon 9, the disqualification of Mr. Gray and the other members of his firm is necessary. In *Auseon, supra,* we said that attorneys must not only adhere to the canons, but that they must also scrupulously avoid those situa-

tions in which it can be said that there is even an appearance of impropriety. This is the requirement of Canon 9. Even in a case such as this where there is no claim of specific unethical conduct, where it might appear that impropriety exists, remedial action is required. The fact that Mr. O'Connor previously represented the defendant and is now associated with an attorney representing the plaintiffs in the same litigation raises surface appearances of impropriety. A partnership of attorneys is typically an association where close communication, cooperation and exchange of knowledge and ideas is common and necessary practice. Where such activity may potentially result in the revelation of the confidences of opposing litigants, there exists an appearance of impropriety which must be eliminated.

Disqualification may seem unwarranted in a case such as this where the question of professional ethics does not involve affirmative wrongdoing or a clear conflict of interest. But involved here is a matter of maintaining the highest standards of professional conduct required to avoid the appearance of impropriety. As members of a profession in which public reliance and trust is so essential and whose members' integrity must be assured to maintain vital public respect, we as attorneys must recognize the importance of a high standard by which our conduct is measured. Even where there is no thought of or intent to do wrong, if our conduct *appears* to be unethical, we weaken that respect and trust just as surely as if we had purposefully violated a specific rule.

Countless situations arise in the day-to-day practice of law which raise questions of what course the attorney should take to resolve a problem whose solution is unclear. A difficult weighing and

balancing of the interests of the client, the attorney, and the legal profession as a whole is required where that problem concerns a matter of professional conduct. But the bottom line should always be this: where it is a question of ethics, the answer is "no". There is no room for "close" questions of professional propriety, particularly at a time when public trust in and respect for the legal profession is not at its highest level.

Reversed.