CALVERT v LAPEER CIRCUIT JUDGES

Docket No. 113725. Submitted August 8, 1990, at Lansing. Decided
February 19, 1991, at 9:25 A.M.

Michael Calvert was suspended from writing criminal bail bonds
for a period of six months and his name was removed from the
list of approved bail bondsmen following informal discussions
with certain judges of the Lapeer Circuit Court and the 71A
District Court about irregularities in Calvert's practices. The
Court of Appeals granted Calvert's complaint for superintend-
ing control and ordered the parties to proceed to a full hearing
on the merits in the same manner as in an appeal of right.

The Court of Appeals *held:*

The Commissioner of Insurance, not the judiciary, is the
entity empowered to suspend a bail bondsman from writing
criminal bail bonds and to remove the bondsman's name from
the approved list of bondsmen. The defendant judges exceeded
their authority, requiring reinstatement of the plaintiff on the
list of approved bondsmen.

1. The Legislature has granted the Commissioner of Insur-
ance the authority to revoke a bail bondsman's license after
complying with certain procedural due process guarantees.

2. The laws which regulate the licensing of surety companies
do not violate the constitution by impermissibly restricting the
supervisory power of the Supreme Court. The statutes relegat-
ing to the Commissioner of Insurance the licensing and regula-
tion of surety bondsmen do not impermissibly intrude upon
inherent judicial power or on the judicial function of setting
bail. The defendants' actions were not within the inherent
constitutional authority of the court to control its judicial
function.

3. A bail bondsman is not an officer of the court. The circuit
court's power to ensure liability on a bond does not confer on
the court the power to regulate the licensure of bondsmen.

Superintending control granted, requiring the circuit court to
reinstate the plaintiff on the list of bondsmen.

GRIFFIN, J., dissenting, stated that the circuit court's author-

REFERENCES
Am Jur 2d, Bail and Recognizance § 8.
See the Index to Annotations under Bail and Recognizance.

ity to remove bail bondsmen from the court's approved list is an inherent power of the judiciary which may not be abridged or restricted by the Legislature. The plaintiff's due process rights may have been violated by the procedure employed by the defendants, and the case should be remanded for a hearing on the merits.

1. BAIL — BONDSMEN — LICENSURE — COMMISSIONER OF INSURANCE.

The Commissioner of Insurance and not the judiciary is the entity authorized to investigate the character and fitness of applicants for licenses as bail bondsmen and to suspend or revoke a license previously issued upon ascertaining that a licensee no longer meets the requirements for licensure (MCL 500.1204[3], 500.1242[2]; MSA 24.11204[3], 24.11242[2]).

2. BAIL — BONDSMEN — LIST OF BONDSMEN.

Any bondsman who is engaged in the business of becoming a surety upon bonds for compensation, upon proper application by the bondsman, must be added to the list of bondsmen compiled annually by the judges of the circuit court; the court does not have the authority to regulate the list of bondsmen or to delete a bondsman's name from the list (MCL 750.167b[4]; MSA 28.364[2][4]).

3. BAIL — BONDSMEN — LICENSURE — COMMISSIONER OF INSURANCE.

The laws which relegate to the Commissioner of Insurance the licensing and regulation of surety companies and bondsmen do not impermissibly intrude upon a court's inherent judicial power or the judicial function of setting bail (Const 1963, art 6, § 4; MCL 550.101 et seq.; MSA 24.241 et seq.).

*Donald E. Zell,* for plaintiff.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Christopher J. Johnson*), for defendants.

Before: CAVANAGH, P.J., and GRIFFIN and JANSEN, JJ.

JANSEN, J. On January 24, 1989, this Court granted plaintiff's complaint for superintending control and ordered the parties to proceed to a full hearing on the merits in the same manner as in an appeal of right. The issue before this Court is

whether the Insurance Commissioner or defendants have the authority to suspend plaintiff and remove him from the approved-bondsmen list. MCL 750.167b(4); MSA 28.364(2)(4). Plaintiff claims that the defendant judges did not have authority to suspend him from writing criminal bail bonds and remove his name from the approved list of bondsmen. We agree, and enter an order of superintending control requiring defendants to reinstate plaintiff on the list of approved bail bondsmen.

Plaintiff was certified and licensed on February 28, 1985, by the Department of Licensing and Regulation, Insurance Bureau. On October 4, 1988, plaintiff was suspended from writing bail bonds for six months following an informal meeting with the defendant judges, during which plaintiff and his attorney discussed their concerns about certain irregularities. During the course of the meeting, plaintiff admitted to charging more than ten percent of the face value of bonds, in violation of MCL 750.167b(3); MSA 28.364(2)(3). On that basis, defendant judges suspended plaintiff from writing bail bonds. Shortly thereafter, the chief judge of the circuit court posted a list of approved bail bondsmen pursuant to the provisions of MCL 750.167b(4); MSA 28.364(2)(4). This list did not include plaintiff's bonding service.

On appeal, plaintiff alleges that defendant judges did not have the authority to review the moral fitness or fiscal responsibility of plaintiff and remove him from the list of approved bail bondsmen. We agree. The applicable statutes empower the Insurance Commissioner to investigate a license applicant's character and fitness, MCL 500.1204(3); MSA 24.11204(3), and to suspend or revoke a license previously issued, after notice and opportunity for a hearing, upon ascertaining that the licensee no longer meets the requirements for licensure, MCL 500.1242(2); MSA 24.11242(2).

Thus, the Legislature has granted the Insurance Commissioner the authority to revoke plaintiff's license after complying with certain procedural due process guarantees.

Further, MCL 750.167b; MSA 28.364(2) does not grant the court authority to regulate the list of bondsmen or to delete a bondsman's name. Section 167b provides restrictions on contributions for the procurement of any bond, on bondsmen aiding in the procurement of an attorney for any person in a criminal case, on the maximum charge for bonds, and on the procurement of any dismissal of charges. Section 167b also provides for the compilation of a list of bail bondsmen. Specifically, § 167b(4) provides:

> A typewritten or printed list, alphabetically arranged, of all persons engaged in the business of becoming surety upon bonds for compensation in criminal cases within the county shall be posted in a conspicuous place in each police precinct, jail, prisoner's dock and house of detention and in every other place in which persons in custody of the law are detained, and 1 or more copies thereof shall be kept on hand. The list shall be compiled annually by the judges of the circuit court of each circuit, and the names of persons engaged in the business of becoming surety upon bonds for compensation shall be added to the list by the judges upon proper application.

Section 167b also provides that a person violating the section can be convicted of being a disorderly person, a misdemeanor under MCL 750.168; MSA 28.365.

We hold that § 167b(4) does not give the circuit court discretion in placing the names of bondsmen on the list of bondsmen. Section 167b(4) states that the "list shall be compiled annually by the judges of the circuit court of each circuit" and that the

names of sureties "shall be added to the list" upon
proper application. The use of the word "shall" in
subsection 4 requires that any bondsman who is
engaged in the business of becoming surety shall
be added to the list upon proper application. *Ac-
tion Auto, Inc v Anderson,* 165 Mich App 620, 628;
419 NW2d 36 (1988). The determination of
whether a particular bondsman's license should be
revoked and the bondsman thereafter removed
from the list is left to the Insurance Commissioner
under MCL 500.1242(2); MSA 24.11242(2). Statutes
relating to the same subject but enacted at differ-
ent times must be construed in pari materia to
preserve the intent of each and to ensure that the
effectiveness of one does not negate the effective-
ness of the other. *Bay Co Executive v Bay Co Bd of
Comm'rs,* 177 Mich App 560, 567-568; 443 NW2d
168 (1989). Reading the statutes in pari materia,
we conclude that the Insurance Commissioner, not
the circuit court, has power to review a bonds-
man's qualifications for licensure.

We are not persuaded by defendant judges' argu-
ment that the laws which regulate licensing of
surety companies, MCL 550.101 *et seq.*; MSA
24.241 *et seq.,* violate Const 1963, art 6, § 4 by
impermissibly restricting the supervisory power of
the Supreme Court. In *Pressley v Wayne Co
Sheriff,* 30 Mich App 300; 186 NW2d 412 (1971),
this Court held that the bail deposit act which
preserves to the judge the power to set the amount
of bail but deprives the judge of the power to
prescribe the form of the bond or the security for
its performance did not violate separation of pow-
ers protections. The *Pressley* Court opined that,
assuming that the setting of bail is a judicial
function, depriving a judge of the power to require
that the offender furnish a surety willing to stand
behind his undertaking does not interfere with the
trial court's performance of the bail-setting func-
tion. Nor does the bail deposit act significantly

erode the court's power to control judicial business. *Id.*, at 315. The *Pressley* Court concluded that the act does not constitute an impermissible intrusion upon inherent judicial power. We hold that the statutes relegating the licensing and regulation of surety bondsmen to the Insurance Commissioner do not impermissibly intrude upon the inherent judicial power or on the judicial function of setting bail.

Likewise, we are unpersuaded by the dissenting opinion that defendants' actions were within the inherent constitutional authority of the court to control its judicial function. The cases relied upon by the dissent, involve court personnel and officers of the court. We are not persuaded that a bail bondsman is an officer of the court. As the dissent notes, a surety bond is a "contract between the government and the principal and surety." *People v Tom Johnson,* 72 Mich App 702, 707; 250 NW2d 508 (1976). The circuit court has the power to regulate and ensure compliance with the bond contract and has jurisdiction over the surety's liability on the bond or undertaking. MCR 3.604(B). While the circuit court may have the power and jurisdiction to ensure liability on the bond, it does not follow that the court has the power to regulate the licensure of bondsmen. Where the circuit court is confronted with a question regarding the moral fitness and fiscal responsibility of a particular bondsman, it can bring these facts to the attention of the Insurance Commissioner, who shall proceed under MCL 500.1242(2); MSA 24.11242(2). Thus, we hold that the circuit court's power to ensure liability on a bond does not confer the power to regulate the licensure of bondsmen outside of the provisions of § 1242.

In reviewing a writ of superintending control, we are invoking an extraordinary power, generally

limited to determining if the lower court exceeded its jurisdiction and proceeded according to law. *Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672; 194 NW2d 693 (1972). We hold that the circuit court exceeded its jurisdiction and authority in removing plaintiff from the list of approved bondsmen. There is no statutory authority for the court's action. That authority is properly granted to the Insurance Commissioner. Thus, we issue an order of superintending control requiring the circuit court to reinstate plaintiff on the list of bondsmen as required under MCL 750.167b(4); MSA 28.364(2)(4) pursuant to MCR 7.206(B) and MCR 7.216(A)(7).

CAVANAGH, P.J., concurred.

GRIFFIN, J. *(dissenting).* The principal issue presented in this complaint for superintending control is whether the circuit court exceeded its authority by removing plaintiff from the circuit court's list of approved bail bondsmen. A subissue raised is whether the plaintiff's procedural due process rights were violated by the manner in which he was removed. I would hold that the authority to remove bail bondsmen from the court's approved list is an inherent power of the judiciary which may not be abridged or restricted by the Legislature. In this case, however, I would remand for a hearing on the merits of the allegations of misconduct which have been asserted against the plaintiff.

I

A

The primary source of judicial power is constitutional in origin. Const 1963, art 3, § 2, and art 6.

Also see *In re 1976 PA 267,* 400 Mich 660; 255 NW2d 635 (1977), and *Attorney General, ex rel Cook v O'Neill,* 280 Mich 649; 274 NW 445 (1937). The court's inherent powers which flow from the constitution may not be abridged or restricted by statute. *Id.*

In concluding that the circuit court has no inherent authority to regulate the qualification, fitness, and integrity of the bail bondsmen who conduct business in the circuit court, the majority places heavy reliance upon this Court's decision in *Pressley v Wayne Co Sheriff,* 30 Mich App 300; 186 NW2d 412 (1971). In *Pressley,* the constitutionality of the ten-percent bail deposit act was upheld despite a challenge that it violated the separation of powers doctrine. In ruling that the statute did not erode the court's inherent power to control judicial business, this Court stated that the line of demarcation is not precise. Furthermore, it was noted that many legislative enactments have been held to unconstitutionally restrict the judiciary's inherent power:

> Some legislative enactments have, indeed, been viewed as an unwarranted interference with the judicial power.[23] The line between one and the other does not lend itself to precise demarcation. In reaching a judgment, case by case, we seek to distinguish between details and fundamentals.
>
> ---
>
> [23] *Bielecki v United Trucking Service,* 247 Mich 661, 665-667 [226 NW 675 (1929)]; *People v Holschuh,* 235 Mich 272, 275 [209 NW 158 (1926)]; cf. *Harker v Bushouse,* 254 Mich 187, 192 [236 NW 222 (1931)], with *Darr v Buckley,* 355 Mich 392, 396 [94 NW2d 837 (1959)]; cf. 382 Mich xxxii, modifying [1967 PA 263], MCL 600.2166 (Stat Ann 1970 Cum Supp 27A.2166 [dead man's statute]) with *Mallery v Van Hoeven,* 332 Mich 561, 566 [52 NW2d 341 (1952)]; *Gray v Clerk of Common Pleas Court,* 366 Mich 588, 594, 595 [115 NW2d 411 (1962)]; *In re White,* 340 Mich 140, 149 [65 NW2d 296 (1954)].

[*Id.* at 314-315.]

Although I question whether *Pressley* was cor-

rectly decided, I find more analogous to the instant case the decisions by the Supreme Court in *Gray v Clerk of Common Pleas Court*, 366 Mich 588; 115 NW2d 411 (1962), and *Ayres v Hadaway*, 303 Mich 589; 6 NW2d 905 (1942), which recognize the judiciary's inherent authority to regulate bailiffs, attorneys, and other officers of the court.

In *Gray*, the plaintiff argued that the court's authority to remove him as a bailiff was restricted by an act of the Legislature. The Supreme Court, however, disagreed, holding that a statute which sought to limit the court's power to regulate its bailiffs was an unconstitutional intrusion upon the inherent power of the judiciary:

> The judiciary is an independent department of the State, deriving none of its judicial powers from either of the other 2 departments. This is true although the legislature may create courts under the provisions of the Constitution. The judicial powers are conferred by the Constitution and not by the act creating the court. The rule is well settled that under our form of government the Constitution confers on the judicial department all the authority necessary to exercise its powers as a co-ordinate branch of the government. It is only in such a manner that the independence of the judiciary can be preserved. The courts cannot be hampered or limited in the discharge of their functions by either of the other 2 branches of government. To remove bailiffs and other court personnel for cause is an inherent power of the judiciary. [*Gray, supra* at 595.]

Earlier, in *Ayres,* the Supreme Court upheld the statute which authorized the creation of the State Bar of Michigan. In doing so, the Court quoted with approval authorities from other jurisdictions for the proposition that the judiciary has inherent power to regulate the conduct and qualifications of its officers:

In [*In re*] *Newby,* 76 Neb 482 [488; 107 NW 850 (1906)], it was said:

"Attorneys practicing in the district courts of this state are officers of the courts in which they practice. Their position is an honorable one; they are the trusted advisers of the court. There can be no doubt that the court has ample power to protect itself against dishonorable and corrupt practitioners."

In [*In re*] *Sparks,* 267 Ky 93 [96; 101 SW2d 194 (1936)], it was said:

"The power to regulate the conduct and qualifications of its officers does not depend upon constitutional or statutory grounds. It is a power which is inherent in this court as a court—appropriate, indeed necessary, to the proper administration of justice." [*Ayres, supra* at 596-597.]

More recently in *State Bar of Michigan v Cramer,* 399 Mich 116, 132; 249 NW2d 1 (1976), the Supreme Court acknowledged that the statutes governing the State Bar of Michigan recognize the inherent authority of the judiciary to control its participants:

This statutory scheme recognizes this inherent authority of the courts to control participants in the courts of the state. *E.g., Ayres v Hadaway,* 303 Mich 589; 6 NW2d 905 (1942).

The circuit court's inherent authority to supervise and discipline the attorneys who practice before it is also recognized in our court rules, MCR 8.122. Furthermore, decisions of this Court have held that an order of disqualification of counsel is an appropriate judicial remedy to address attorney-client conflicts of interest. *GAC Commercial Corp v Mahoney Typographers, Inc,* 66 Mich App 186; 238 NW2d 575 (1975), and *Auseon v Reading Brass Co,* 22 Mich App 505; 177 NW2d 662 (1970).

The essence of the bail bond contract is the

assurance of the principal's appearance by the surety. *People v Harbin,* 88 Mich App 341, 343; 276 NW2d 607 (1979). In this regard, the surety bond has been described as "a contract between the government and the principal and surety." *People v Tom Johnson,* 72 Mich App 702, 707; 250 NW2d 508 (1976). Although the court is a party to the bail bond "contract," the majority would have the Insurance Commissioner, not the court, determine with whom the court must contract. The circumstances of this case clearly show that such a legislative mandate regarding with whom the court must deal would severely abridge and restrict the inherent power of the court to effectively administer its judicial function.

### B

The facts of the instant case are summarized in the following portions of defendants' brief:

> Over a period of some weeks, in August and September of 1988, the respondent judges, the Judges of the 40th Judicial Circuit Court and the 71-A Judicial District Court became aware of certain discrepancies in the bail bond practices of the petitioner, Michael Calvert. . . . Those original problems included such matters as: (1) Charging a criminal defendant in excess of 10% for fees on small surety bonds; (2) Posting 10% bonds for a defendant; (3) Putting up 10% of a $100,000.00 bond in cash ($10,000.00), then presenting a circuit court judge with an order for return of premium and substituting a bond for that amount without disclosing to the circuit court judge that Calvert was posting only 10% of the bail; and (4) Improper charges to a client regarding a bond posted in the district court.
> The respondent judges were especially concerned with these matters since these irregularities could constitute violations of [MCL 750.167b(3); MSA

28.364(2)(3)]. *The respondent judges were also concerned since the action regarding the presentation of an order of return of premium could be construed as a fraud upon the Court,* especially in light of the fact that the Court did not assess the 10% clerk's fee permitted upon the return of the $10,000.00 to the plaintiff since the court was not aware of the circumstances under which the bond was posted. A $1,000.00 fee should have been paid to the clerk of the court as a result of one of these transactions.

After the judges of the 40th Judicial Circuit Court and the 71-A Judicial District Court became aware of these discrepancies and irregularities, a discussion was held among the respondent judges as to the most appropriate way in which to proceed with the matter. In lieu of instituting formal charges, both criminal and civil, against Calvert, the judges decided to meet with Calvert informally. The specific reason for proceeding informally was in deference to the years of bonding service provided by Calvert without significant major problems. It was the intention of the respondent judges not to air the problems and irregularities of Calvert's business in a public forum.

When requesting Mr. Calvert's appearance at the meeting, the respondent judges specifically indicated to him that he was welcome to have an attorney present at the meeting in order to advise and counsel him. In fact, when the meeting occurred, on October 4, 1988, Calvert appeared with his attorney, Mr. Michael Carter.

During the course of the meeting on October 4, 1988, which lasted almost two hours, the judges described the problems with which they were concerned and specifically named the cases involved. . . . A lengthy discussion was held between Calvert, Calvert's attorney and the respondent judges. All of these persons participated fully in the discussion.

At the conclusion of this discussion, Calvert and his attorney departed to the jury room while the respondent judges discussed a possible resolution

regarding the matter. The respondent judges agreed that the best course of action was that the plaintiff be suspended from writing bail bonds before the district and circuit court for a period of six months. In addition, Calvert was expected to pay the $1,000.00 clerk's fee to the County of Lapeer.

Calvert and his attorney, Mr. Michael Carter, were then called back into the office of the chief judge of the circuit court. At this point, they were specifically informed of the decision of the Chief Judge regarding this matter. At that time, the chief judge answered several questions asked by Calvert and his attorney. All questions asked by Calvert and his attorney were answered.

*   *   *

Shortly after October 4, 1988, the chief judge of the circuit court, the Honorable Norman A. Baguley, posted a list of approved bail bondsmen pursuant to the provisions of [MCL 750.167b(4); MSA 28.364(2)(4)]. As previously discussed with Calvert and his attorney, as a result of the irregularities admitted by Calvert, the name of Calvert Bonding Service was deleted from the list. [Emphasis added.]

MCL 750.167b(3); MSA 28.364(2)(3) provides:

It shall be lawful to charge for executing any bond in a criminal case, but no person engaged in the bonding business, either as principal or clerk, agent or representative of another, either directly or indirectly, shall charge, accept or receive any sum of money or property, other than the regular prevailing fee for bonding, which shall not exceed 10% of the face value of the bond for a 12 month period or any part thereof, from any person for whom he has executed bond, for any other service whatever performed in connection with any indictment, information or charge upon which the person is bailed or held. No person engaged, either as principal or as the clerk, agent or representative

of another, in the bonding business shall settle or attempt to settle, or shall procure or attempt to procure, the dismissal of any indictment, information or charge against any person in custody or held upon bond with any court or with the prosecuting attorney in any court.

C

Despite such substantive allegations of misconduct, the majority would require the circuit court to continue to allow the plaintiff to write bail bonds until such time as the Commissioner of Insurance takes action against the plaintiff. Such an abdication of judicial responsibility would be both unwise public policy and an unconstitutional abridgment of the court's inherent constitutional authority to control its judicial function.

In an analogous context, this Court has stated:

A review of the order and the record reveals an apparent emergency situation confronting an experienced and compassionate trial judge. It is mandatory for the trial judge to use inherent judicial powers in order to prevent total chaos in the courtroom. Particularly is this true where we have vague statutory vehicles with which to operate. (See *Sovereign v Sovereign,* 354 Mich 65 [92 NW2d 585 (1958)].) [*Moses v Oakland Circuit Judge,* 14 Mich App 265, 266; 165 NW2d 497 (1968).]

See also *Perin v Peuler (On Rehearing),* 373 Mich 531; 130 NW2d 4 (1964), and *Wayne Circuit Judges v Wayne Co (On Rehearing),* 386 Mich 1; 190 NW2d 228 (1971), cert den 405 US 923 (1972).

Finally, I take cognizance of the court rule, MCR 3.604(B), under which the surety not only consents to further proceedings affecting the surety's liability on the bond, but also consents to the jurisdiction of the court over the surety:

*A surety on a bond* or undertaking given under the Michigan Court Rules or the Revised Judicature Act *submits to the jurisdiction of the court and* consents that further proceedings affecting the surety's liability on the bond or undertaking may be conducted under this rule. [Emphasis added.]

With regard to submission to the jurisdiction of the court, MCR 3.604(B) appears to parallel MCR 8.122, which states in part: "Attorneys are officers of Michigan's one court of justice and are subject to the summary jurisdiction of the court." As previously noted, by operation of this rule and the judiciary's inherent powers, attorneys have been held to be subject to the supervision and control of the court. *GAC Commercial Corp, supra,* and *Auseon, supra.* Similarly, I believe that MCR 3.604(B) recognizes the inherent power of the court to discipline bail bondsmen who conduct business before the court.

I would hold that, by virtue of the constitution, the judiciary possesses inherent power to regulate the qualifications, fitness, and integrity of the bail bondsmen who conduct business before the court. Such authority is concurrent with, not exclusive to, the powers vested in the Insurance Commissioner by the Insurance Code.

II

The remaining issue is whether the procedure employed by the defendants violated the plaintiff's right to procedural due process. On this issue, plaintiff asserts the following:

Plaintiff was never given notice of the charges against him. He was telephoned, and told to appear at the courthouse on October 4, 1988, where he was questioned informally by the judges and was not allowed to call any witnesses. He was

never given a written decision by the judges, and was informed orally, by his lawyer while sitting in the hallway, that he had been suspended from writing bail bonds for six months.

Plaintiff was "found guilty" and "sentenced" without due process, or a hearing. Defendant judges acted as prosecutor, judge and jury, while only giving him a minimal opportunity to speak on his own behalf.

I agree with the plaintiff that, under the circumstances of this case, the constitutional guarantees of procedural due process require more. As we stated in *Abbott v Howard,* 182 Mich App 243, 250-251; 451 NW2d 597 (1990):

[T]he constitutional right to procedural due process requires at a minimum an opportunity to be heard:

"Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." [*Mullane v Central Hanover Trust,* 339 US 306, 313; 70 S Ct 652; 94 L Ed 865 (1950).]

"The fundamental requisite of due process of law is the opportunity to be heard." [*Grannis v Ordean,* 234 US 385, 394; 34 S Ct 779; 58 L Ed 1363 (1914)].

Accordingly, I would remand the case for a hearing on the merits of the allegations of misconduct.