CALVERT v LAPEER CIRCUIT JUDGES

Docket No. 91770. Argued December 9, 1992 (Calendar No. 11).
Decided June 15, 1993. Rehearing denied 443 Mich 1203.

Michael Calvert, doing business as Calvert Bonding Service, was
removed for six months by the judges of the 40th Judicial
Circuit Court and the 71-A Judicial District Court from the list
of persons authorized to write bonds after he admitted engag-
ing in conduct violative of the Penal Code. He thereafter
brought an action for superintending control in the Court of
Appeals. The Court, CAVANAGH, P.J., and JANSEN, J. (GRIFFIN,
J., dissenting), stayed the removal of his name from the list,
holding that the judges did not have the authority to suspend
him from writing bonds or to remove his name from the list
because the sole responsibility for supervising the conduct of
persons who write bonds is vested in the insurance commis-
sioner (Docket No. 113725). The judges appeal.

In an opinion by Justice LEVIN, joined by Chief Justice
CAVANAGH, and Justices BOYLE, GRIFFIN, and MALLETT, the
Supreme Court *held:*

The provisions of the Insurance Code empowering the insur-
ance commissioner to suspend or revoke the license of a surety
who violates a provision of the code does not bar judges from
refusing to accept bonds written or provided by such a person.

1. The Penal Code regulates the conduct of persons engaged
in the business of becoming sureties on bonds for compensation
in criminal cases and requires the judges of a circuit court to
compile annually a list of all persons engaged in that business.
The Insurance Code empowers the insurance commissioner to
investigate the character and fitness of a person who applies for
a license and to suspend or revoke a license, including that of a
bail bondsman. The statutory provisions from which the disci-
plinary power of the insurance commissioner derive were not
intended to occupy the whole field and to preclude judges from
declining to accept bonds from persons who violate provisions
of the law regulating the furnishing of bonds.

2. Statutes should be construed in pari materia to preserve

REFERENCES

Am Jur 2d, Insurance § 23.
See ALR Index under Fidelity Bonds and Insurance.

the intent of each and to ensure that the effectiveness of one does not negate the effectiveness of the other. In this case, in removing the plaintiff's name from the list of bondsmen, the judges did not contravene the purpose of the Insurance Code conferring on the insurance commissioner supervisory authority and the authority to suspend or revoke the license of an agent who violates a provision of the code. Nor does recognizing authority in the judges to remove a person from the list frustrate or impede the effectiveness of the provisions of either the Penal Code or the Insurance Code.

Reversed.

Justice BRICKLEY, joined by Justice RILEY, dissenting, stated that the defendant judges, in deleting the plaintiff from the list of persons licensed to represent sureties in their county, disregarded the clear mandate of MCL 750.1676(4); MSA 28.364(2)(4) and unnecessarily exceeded their authority.

187 Mich App 431; 468 NW2d 253 (1991) reversed.

BAIL — BONDSMEN — SUSPENSION BY COURT.

The provisions of the Insurance Code empowering the insurance commissioner to suspend or revoke the license of a surety who violates a provision of the code does not bar judges from refusing to accept bonds written or provided by such a person (MCL 750.167b; MSA 28.364[2], MCL 550.101 *et seq.*; MSA 24.241 *et seq.*).

*James M. Cohen* for the plaintiff.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Christopher J. Johnson* and *Gail P. Massad*), for the defendant.

LEVIN, J. The Penal Code regulates the conduct of persons engaged in the business of becoming sureties on bonds for compensation in criminal cases, and requires the judges of a circuit court to compile annually a list of all persons engaged in that business.[1]

---

[1] A typewritten or printed list, alphabetically arranged, of all persons engaged in the business of becoming surety upon bonds for compensation in criminal cases within the county shall be posted in a conspicuous place in each police precinct, jail, prisoner's dock and house of detention and in every other place

The judges of the Lapeer Circuit Court and a district court removed the name of plaintiff Michael Calvert, doing business as Calvert Bonding Service, from the list of persons authorized to write bonds after he admitted charging fees and engaging in other conduct violative of the provisions of the Penal Code. The suspension was for a period of six months.

Calvert commenced an action for superintending control in the Court of Appeals. That Court stayed the removal of Calvert's name from the list, and subsequently held that the judges did not have the authority to suspend Calvert from writing bonds or to remove his name from the list. The Court ruled that the sole responsibility for supervising the conduct of persons who write bonds had been vested by the Legislature in the insurance commissioner.[2] Reference was made to provisions of the Insurance Code empowering the insurance commissioner to investigate the character and fitness

in which persons in custody of the law are detained, and 1 or more copies thereof shall be kept on hand. The list shall be compiled annually by the judges of the circuit court of each circuit, and the names of persons engaged in the business of becoming surety upon bonds for compensation shall be added to the list by the judges upon proper application. When any person who is detained in custody in any such place of detention requests any person in charge thereof to furnish him the name of a bondsman, or to put him in communication with a bondsman, the list shall be furnished to the person so requesting, without recommendation, and the person in charge of the place of detention within a reasonable time shall put the person detained in communication with the bondsman selected and, contemporaneously with the transaction, make in the blotter or book of record kept in any place of detention a record showing the name of the person requesting the bondsman, the offense with which the person is charged, the time at which the request was made, the bondsman requested, and the person by whom the bondsman was called, and preserve the same as a permanent record in the book or blotter in which entered. [MCL 750.167b(4); MSA 28.364(2)(4).]

[2] 187 Mich App 431; 468 NW2d 253 (1991).

of a person who applies for a license, and to suspend or revoke a license.[3]

The Court of Appeals said that the question presented was whether the judges *or* "the Insurance Commissioner . . . have the authority to suspend" Calvert and remove his name from the list.[4] (Emphasis added.) While the insurance commissioner has the power to discipline insurance agents and bail bondsmen, it does not follow that the statutory provisions from which the disciplinary powers of the insurance commissioner derive were intended to occupy the whole field and to preclude judges from declining to accept bonds from persons who violate provisions of the law regulating the furnishing of bonds. We reverse the decision of the Court of Appeals because the Insurance Code, in providing that the commissioner may suspend or revoke the license of an agent, does not bar judges from refusing to accept bonds written or provided by a person who violates the provisions of the Penal Code concerning the writing of bonds.[5]

---

[3] After examination, investigation, and interrogatories, the commissioner shall license an applicant if the commissioner determines that the applicant is an employee of, or is authorized in writing to represent, an insurer which is authorized to transact insurance in this state, and the applicant possesses reasonable understanding of the provisions, terms, and conditions of the insurance the applicant will be licensed to solicit, possesses reasonable understanding of the insurance laws of this state, intends in good faith to act as an agent, is honest and trustworthy, possesses a good business reputation, and possesses good moral character to act as an agent. [MCL 500.1204(4); MSA 24.11204(4).]

The commissioner, after notice and opportunity for a hearing, may suspend or revoke the license of an agent, solicitor, insurance counselor or adjuster who fails to maintain the standards required for initial licensing or who violates any provision of this act. [MCL 500.1242(2); MSA 24.11242(2).]

[4] Note 2 *supra,* p 433.

[5] The Court of Appeals said that it was not persuaded that the provisions of the insurance laws regulating licensing of surety compa-

I

Courts generally have held that the judicial power includes the authority to decline for good reason to accept a bond.

A panel of the Pennsylvania Superior Court said that the power to fix bail or accept recognizance is a "judicial power," and a judicial officer has the right to exercise reasonable discretion respecting "the sureties, and all other matters in connection therewith" as "necessary incidents to judicial power, subject only to limitations imposed by the constitution and statutes."[6] The Tennessee Supreme Court said that a judge "has full authority to determine who shall and who shall not qualify as a bondsman in his own court."[7]

The Supreme Court of Nebraska said that the acceptance and approval of bonds is a "judicial function of the court."[8] A panel of the North Carolina Court of Appeals said that "reasonable requirements governing and regulating professional . . . bondsmen clearly come within

nies, MCL 550.101 et seq.; MSA 24.241 et seq., were violative of Const 1963, art 6, § 4 concerning the judicial power.

Because we conclude that the Insurance Code does not confer on the insurance commissioner such comprehensive authority to suspend or revoke the license of an agent that excludes the exercise of similar power by judges, we do not consider or address the question whether the Legislature could constitutionally eliminate judicial power to suspend or revoke the authority of a person who writes bail bonds and who has been found to have done so in violation of law.

[6] *Commonwealth v Miller,* 105 Pa Super 56, 59; 160 A 240 (1932).

[7] *Gilbreath v Ferguson,* 195 Tenn 528, 533; 260 SW2d 276 (1953).

Another Tennessee court said that a trial court has the "inherent power to administer its affairs, including the right to impose reasonable regulations regarding the making of bonds." *Hull v State,* 543 SW2d 611, 612 (Tenn Crim App, 1976).

[8] *Summit Fidelity & Surety Co of Akron, Ohio v Nimtz,* 158 Neb 762, 769; 64 NW2d 803 (1954).

the inherent powers of the court and may be properly supervised by the court."[9]

A panel of the Ohio Court of Appeals said that "in determining the sufficiency of a surety the courts have a sound discretion to determine not only his financial ability to respond to the penalty in the bond but also his moral responsibility in reaching a conclusion as to whether bail will insure the presence of the defendant."[10]

The United States Court of Appeals for the Second Circuit said:

> The court is not without protection if the surety company is deemed a poor moral or unsafe risk. If the surety company should so conduct its business as to lose the confidence of the court or a judge thereof, the judge to whom an undertaking is submitted in any case for approval could refuse to approve it. . . . Like any other financial risk in giving an undertaking or guaranty, a moral risk as well as the material risk is involved. [*Concord Casualty & Surety Co v United States*, 69 F2d 78, 81 (CA 2, 1934).][11]

---

[9] *In re Johnson*, 26 NC App 745, 748-749; 217 SE2d 85 (1975).

A United States district court said that the "determination of the quality of the surety is a matter left to the discretion of the officer empowered to take bail and approve the surety." *United States v Caliguiri*, 35 F Supp 799, 801 (D NJ, 1940). See also *People v Follette*, 74 Cal App 178, 221-222; 240 P 502 (1925).

Similarly, see, in the context of a statutory framework, *Pierce v State*, 39 Tex Crim App 343; 45 SW 1019 (1898); *Ex parte Ruef*, 8 Cal App 468; 97 P 89 (1908).

[10] *State ex rel Howell v Schiele*, 85 Ohio App 356, 363; 88 NE2d 215 (1949).

Similarly, see, *United States v Lee*, 170 F 613, 614 (SD Ohio, 1909), where the court said:

> Sureties . . . should be persons of sufficient financial ability and of sufficient vigilance to secure the appearance and prevent the absconding of the accused.

See also *United States v Melville*, 309 F Supp 824, 828 (SD NY, 1970).

[11] See also *American Druggists Ins Co v Bogart*, 707 F2d 1229, 1233

II

The Court of Appeals construed the provision of the Penal Code[12] requiring that a list of persons engaged in the business of providing bonds be compiled annually by the judges of each circuit, as mandating that the list include any person who makes "proper application."[13]

The Court then read this provision of the Penal Code in pari materia with provisions of the Insurance Code[14] stating that the insurance commissioner shall have supervisory power and the power to suspend or revoke the license of an agent who fails to maintain the standards required for initial licensing or who violates any provision of the Insurance Code, and concluded that "the Insurance Commissioner, not the circuit court, has

---

(CA 11, 1983) ("[T]he Court's bond approval process embraces an evaluation of both the moral and financial integrity of the surety"). See also *Taylor v Waddey*, 206 Tenn 497, 503-505; 334 SW2d 733 (1960).

In *State v Armstrong*, 364 So 2d 558, 562 (La, 1978), the court said:

> [W]ithin its inherent power to regulate judicial proceedings before it, the trial court may inhibit or deny an authorized surety company from furnishing bail undertakings before that court, upon a finding (after notice and hearing) that the company is a poor moral or unsafe risk because of its prior illegal or immoral conduct in its bail business, or because it fails to comply with a valid rule or ruling of the court in connection with its bail undertakings in that court.

[12] See n 1 for text.

[13] The Court said that this provision "does not give the circuit court discretion in placing the names of bondsmen on the list of bondsmen." The Court added: "The use of the word 'shall' in subsection 4 requires that any bondsman who is engaged in the business of becoming surety shall be added to the list upon proper application." Note 2 *supra*, pp 434-435.

[14] See n 3.

MCL 550.103; MSA 24.243 provides that the insurance commissioner shall determine whether a company may do business as a surety in Michigan.

power to review a bondsman's qualifications for licensure."[15] The Court ruled that the circuit court exceeded its jurisdiction and authority in removing Calvert from the list, stating that there is "no statutory authority for the court's action" and that that authority was granted to the insurance commissioner.[16]

### III

We agree with the Court of Appeals that the several statutes should be "construed in pari materia to preserve the intent of each and to ensure that the effectiveness of one does not negate the effectiveness of the other."[17]

In removing Calvert's name from the list, the judges did not, however, contravene the purpose of the provisions of the Insurance Code conferring on the insurance commissioner supervisory authority and the authority to suspend or revoke the license of an agent who violates a provision of the code. Nor does recognizing authority in the judges to remove a person from the list frustrate or impede the effectiveness of the provisions of either the Penal Code or the Insurance Code.[18]

---

[15] Note 2 *supra*, p 435.

[16] *Id.*, p 437.

[17] *Id.*, p 435.

[18] The statute directing the circuit courts to compile annually a list of qualified bondsmen is part of the "Disorderly Persons" chapter of the Penal Code. On its face, § 167b (see n 1 for text), aims, not at limiting the supervisory powers of the circuit court, but at preventing abuse of the bail bond system.

Subsection (1) prohibits bondsmen from procuring business by giving money or property to persons operating within the criminal justice system. MCL 750.167b(1); MSA 28.364(2)(1). Subsection (2) prohibits bondsmen from procuring business for attorneys. MCL 750.167b(2); MSA 28.364(2)(2). Subsection (3) sets fee limits on bonds, and prohibits any involvement of bondsmen in seeking dismissals of criminal charges. MCL 750.167b(3); MSA 28.364(2)(3). Subsection (4) requires that a list of bondsmen be made available anywhere persons

As stated in a somewhat similar situation by the United States Court of Appeals for the Eleventh Circuit:

> The surety's approval by the Secretary of the Treasury . . . does not preclude the district court from exercising its discretion to approve only those bonds which it feels confident will result in the defendant's presence at trial. [*American Druggists Ins Co v Bogart*, 707 F2d 1229, 1233 (CA 11, 1983).]

In *In re Johnson*, 26 NC App 745; 217 SE2d 85 (1975), a bondsman was prohibited from engaging in the bail bond business in Durham County for one year after the superior court found that he wilfully or negligently filed inaccurate weekly reports with the clerk of the court. Johnson contended that the court lacked jurisdiction for such disciplinary action because the state had granted authority to regulate bondsmen to the county government. A panel of the Court of Appeals,

are kept in custody, and that the list be compiled annually. MCL 750.167b(4); MSA 28.364(2)(4). Violation of any provision of the chapter is a misdemeanor. MCL 750.167b(5); MSA 28.364(2)(5).

The whole of § 167b is directed toward protecting the integrity of the bail bond system. Neither bondsmen nor any other participants in the criminal justice system are to be permitted to manipulate the bond process to their advantage. Bondsmen may not seek to influence participants in the criminal justice system to steer business to them or away from competitors. Attorneys may not exploit the advantage of the contact, likely to occur at an early point in the process, between bondsmen and defendants. The requirement that a list be prepared gives circuit judges responsibility for maintaining an impartial list that assures access to the system by both bondsmen and persons in custody.

The listing requirement does not limit the discretion of circuit judges, but, rather, imposes on them an essentially administrative duty. The administrative character of the listing requirements is evident when it is viewed along with the other requirements relating to the list set out in subsection (4).

The names must be typewritten or printed, arranged alphabetically, posted in a conspicuous place, and furnished upon request without recommendation. The name of any bondsman selected must also be recorded at the place of detention. These requirements are aimed at protecting the bond system from manipulation and favoritism.

acknowledging the grant of power to local officials, said:

> [I]t was not an exclusive grant of authority, and the court was not precluded from promulgating rules governing and regulating professional bondsmen offering bonds in said court. [*Id.*, p 747.]

The Nebraska Supreme Court similarly observed:

> The fact that the Department of Insurance authorized the relators to do business in this state, and that [the relators] are certified by the Department of Insurance as duly licensed resident agents of the Summit Fidelity and Surety Company, relator, does not make it mandatory that any court in the State of Nebraska accept any bond tendered in behalf of such company by such relators . . . . The acceptance and approval of bonds such as referred to in the instant case is a judicial function of the court. [*Summit Fidelity & Surety Co of Akron, Ohio v Nimtz*, 158 Neb 762, 769; 64 NW2d 803 (1954).]

Reversed.

CAVANAGH, C.J., and BOYLE, GRIFFIN, and MALLETT, JJ., concurred with LEVIN, J.

BRICKLEY, J. (*dissenting*). I agree with the majority that because the insurance commissioner has been given licensing and regulatory authority over a bail bondsman does not mean that a judge setting bail must accept the surety of a particular licensed bondsman.

I do not agree with, and respectfully dissent from, the majority view that a judicial circuit can disregard the clear mandate of the statute that plaintiff, as one "engaged in the business of becom-

ing surety upon bonds," be included in the annually compiled list of such persons. MCL 750.167b(4); MSA 28.364(2)(4).

I

As pointed out by the majority, the judges of each circuit have been given the administrative task of listing and posting in designated places the names of those writing bonds in the county. It is understandable that the defendants, in their efforts to correct the irregularities and violations allegedly perpetrated by the plaintiff, would seek to remove him from the list and thus disconnect him from exposure to his clients, rather than rely on their own abilities to refuse to honor his bonds in their respective courtrooms.

Efficiency, however, is not reason enough to ignore the clear mandate of the statute. Nor, in my view, is it satisfactory to base a decision whether or not to observe the statute on the fact, as set forth by the majority, that "[i]n removing Calvert's name from the list, the judges did not, however, contravene the purpose . . . of the Insurance Code . . . [or] frustrate or impede the effectiveness of . . . either the Penal Code or the Insurance Code . . . ." *Ante* at 416. It is unseemly and without authority on the subject of legislative interpretation[1] for this Court to suggest that a statute need only be complied with if doing so

---

[1] The majority cites *American Druggists Ins Co v Bogart,* 707 F2d 1229, 1233 (CA 11, 1983) (placing a surety on a disqualification list for failing to pay a bond forfeiture violates the basic due process rights of the surety), *In re Johnson,* 26 NC App 745, 748-749; 217 SE2d 85 (1975) (suspending a bondsman for one year was a disciplinary proceeding regarding the violation of a court order, not the revocation of his license), and *Summit Fidelity & Surety Co of Akron, Ohio v Nimtz,* 158 Neb 762; 64 NW2d 803 (1954) (issuing a writ of mandamus requiring the judges to refrain from enforcing a court rule regulating bondsmen where questions of fact remain was an abuse of discretion), in support of the rule announced, but those cases do not stand for the

fulfills its perceived purpose. We too are subject to
the law.

II

The defendant judges call upon us to recognize
their "inherent supervisory authority" as a basis
for disregarding the mandate of MCL 750.167b(4);
MSA 28.364(2)(4).

The judges assert:

> To deny a court the jurisdiction and authority to
> review the moral fitness and/or financial responsi-
> bility of bail bondsmen, as well as compliance with
> the laws of the State of Michigan, would be to
> violate the very principles and beliefs which for-
> mulated the separation of powers doctrine; and the
> inherent supervisory authority a court has over *all*
> persons appearing before it.

There can be no doubt but that the judges' task
would be made easier if they could address their
plight under a doctrine of "inherent supervisory
authority." I believe, however, that the plight and
their view of the availability of inherent power is
exaggerated.

First, the judges are not as helpless as they
seem to believe. While it would make more sense
to be able to remove a bondsman from a list
promulgated by the judges, in fact they have indi-
cated their intention to disapprove of his bonds
and sureties case by case. I do not think, however,
that the better sense approach justifies reliance on
the inherent power doctrine. The court is clearly
not helpless, as evidenced by the fact that forfei-
tures against the plaintiff in nine different cases
from the defendants' circuit were approved on

proposition that the court can ignore a specific legislative mandate
requiring a listing of bondsmen in the county.

appeal. See *Calvert v Lapeer Circuit Judges,* unpublished opinion per curiam of the Court of Appeals, decided November 28, 1992 (Docket No. 125191).

Secondly, while the defendants state, "The Court of Appeals would have Michigan trial courts close their eyes to such misconduct and simply turn the matter over to the Commissioner of Insurance," there is no evidence that the circuit court, either on its own or through the State Court Administrator's office, has brought its concerns to the commissioner of insurance. It would be entirely too cynical to suggest that it is better to enroll yet another class of citizens as officers of the court[2] and declare yet another inherent authority, than to rely on a legislatively created regulatory scheme that must be adhered to and relied on by the public at large with similar concerns.

In support of their position, defendants cite and quote an opinion of Federal District Judge Newblatt in which he dismissed a civil rights action filed by the plaintiff against the defendants:

"[T]he Court finds that supervisory control of the conduct of licensed bail bondspersons acting as bail bondspersons is within the judicial power of the court(s) in which the bail bondsperson provides bond including the right to approve or reject the bonds proffered by the bondsperson. *The authority under Michigan law of the Insurance Commissioner to license bondspersons and to review and revoke such licenses does not negate the power of a court to control the conduct of such bondspersons in that court.* MCL 550.103, 550.104, [500].1242(2) [MSA 24.243, 24.244, 24.11242(2)]. Moreover, the statute relied upon by the Michigan Court of Appeals in *Calvert v Lapeer Circuit*

---

[2] Defendant's agree with the dissent in the Court of Appeals that bondsmen are akin to bailiffs or lawyers and should be considered officers of the court.

*Judges,* 187 Mich App 431 [468 NW2d 253] (1991),
to hold that judges do not have authority to review
the moral fitness or fiscal responsibility of bail
bondspersons *only refers to posting of a list in
a conspicuous place and does not in any way
negate the power of the court to control the con-
duct of such licensees.* MCL 750.167[b](4) [MSA
28.364(2)(4)] . . . .

"Accordingly, I hold that as to the matters
alleged in Count I, the defendant state judges were
acting in an area in which they have jurisdiction
and were acting in their judicial and not their
administrative capacity. Thus, they are absolutely
immune." [*Calvert v Connolly,* unpublished opin-
ion of the United States District Court for the
Eastern District of Michigan, decided June 30,
1992 (Docket No. 91-CV-40304-FL). Emphasis in
the original.]

I, and I am sure the majority, agree with Judge
Newblatt, but it does not support the defendants'
claim that they can disregard the mandate of the
state statute. A careful reading of this quotation
makes it clear that Judge Newblatt is referring to
the ability of a judge to supervise his dealings with
a bail bondsman who is acting on behalf of a
defendant in a given case. He also supports the
position taken by the majority, with which I agree,
that the licensing authority of the insurance com-
missioner does not interfere with judges' ability to
refuse to accept bonds written by plaintiff or a
similarly situated surety. *Id.* The federal district
judge then goes on to say that the statute denying
the judges' "authority to review the moral fitness
or fiscal responsibility of bail bondspersons only
refers to posting of a list in a conspicuous place
and does not in any way negate the power of the
court to control the conduct of such licensees." *Id.*

III

I agree with Judge Newblatt and would find that, while the circuit judges have certainly done their best to keep the bail bond practices of their court above reproach, they have nonetheless unnecessarily exceeded their authority in having the plaintiff deleted from the list of those licensed to represent sureties in that county.

RILEY, J., concurred with BRICKLEY, J.